IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1879, IN THE
SIXTY-FOURTH YEAR OF THE STATE.

———————

### BURT ET AL. *v.* BOWLES ET AL.

FRAUDULENT REPRESENTATIONS.—*Promise to be Performed in Future.*—Representations, to be fraudulent, must be made concerning existing facts; and promises made to be performed in the future, although fraudulently made and afterward broken, do not constitute fraud.

SAME.—*False Representations of Law not Fraud.*—Fraud can not be predicated upon representations of the law, however false they may be, and whether they are suppressions of truth or representations of falsehood. Every person is bound to know the law, and not to be deceived by its suppression or false representation.

RESCISSION OF CONTRACT.—Money paid, or personal property delivered, or real estate conveyed, under a void contract, or a contract which can not be enforced, may be recovered back or compensation had therefor, and the contract rescinded, even against the representatives of one of the parties thereto, when the rights of others have not intervened.

ACTION TO RECOVER REAL ESTATE.—*Equitable Title.—Right of Possession.* —A plaintiff may recover real property upon an equitable title, when he has the right of possession.

From the Orange Circuit Court.

*D. R. Eckels* and *W. W. Spencer,* for appellants.

*J. Baker,* for appellees.

BIDDLE, J.—Complaint in four paragraphs by the appellants against the appellees. The substantial facts averred in the first paragraph are as follows :

That the plaintiffs were possessed in their own right of a considerable estate in moneys; that the defendant Julia Bowles is the widow of William A. Bowles, deceased, and the said defendants William A. Dill and Mary Mac. Dill are the grandchildren and heirs at law of William A. Bowles; that said Bowles became the guardian of the persons and property of the plaintiffs, and became possessed of the property, and, as such guardian, during their minority, and, after their majority, as their friend and agent, had the control and management thereof until his death, on the 28th day of March, 1873; that, by the death of an aunt, Evaline Burt, the plaintiffs became possessed of an additional estate of great value ; that said Evaline, in contemplation of death, and reposing great faith, confidence and trust in said Bowles, who pretended great interest and friendship for the plaintiffs, and who was reputed a man of great wisdom, financial skill and acumen, committed to his charge the custody, care and control of the plaintiffs and their interest in her said estate, enjoining upon these plaintiffs, who were then of full age, that they should allow the said Bowles to control their said affairs, which, in deference to the wish of their dying relation, they agreed to do, themselves believing that he was, and would continue to be, their friend and faithful adviser; that said Bowles accepted said trust, and promised the said Evaline and these plaintiffs that he would guard and protect their interest and manage their affairs; that certain lands, the title to which was then in the said Bowles, but the purchase-money of which was paid out of the moneys belonging to the plaintiffs, should be conveyed to the plaintiffs, and improved for their future home ; that said Bowles did convey to the plain-

tiffs, as tenants in common, in the year 1867, the said lands, to wit: (Here the lands are described); that, in the year 1868, the said Bowles, pretending great affection for the plaintiffs, and being involved in domestic troubles, and being old, and plaintiffs feeling a great regard for him, induced the plaintiffs to move upon said lands, and did thereafter for a period of years furnish him a home, nursing and caring for him in sickness and in health; that said Bowles, with the money and means of the plaintiffs, made valuable and lasting improvements on said lands, at the cost of five thousand dollars; that, in the year 1868, the then wife of Bowles, from whom he had separated, in an action for divorce, obtained a decree for alimony in the amount of twenty-five thousand dollars, which, being still unpaid, amounts in the aggregate to the sum of thirty-five thousand dollars; that by reason of said decree, and other judgments, he became and was greatly embarrassed financially, during all which time he continued to act as agent of the plaintiffs, and manager of their moneys and estate—the plaintiffs being ignorant of these facts—he falsely and fraudulently pretending to be able to pay off all said liens upon his land, and account to them; that having the full confidence of the plaintiffs, and knowing that they were ignorant of his financial condition, and intending to cheat them, as hereinafter set forth, he entered into a matrimonial alliance with the said Julia; that, immediately after his marriage with Julia, they began to conspire together to cheat, wrong and rob the plaintiffs of their moneys and lands; that, pretending to set their hearts upon said lands and house of plaintiffs for a home for themselves, the said Bowles, with the connivance and procurement of said Julia, did, on the 8th day of July, 1872, and at divers times thereafter, represent to the plaintiffs that he was old, that said land and house suited him, that he

had other lands which would better suit them, and that, in
view of his kindness to them, they ought to convey to him
their said house and place heretofore mentioned, and
fraudulently represented to them that, if they would do so,
he would, with his said wife, convey to Rachel Burt
for her interest therein certain lands described, by a deed
of warranty, and that, before doing so, he would discharge
said lands of all liens and incumbrances, so that the plain-
tiffs should have a good title thereto ; that, still confiding
in said Bowles, and believing that he could and would do
as he promised, they did, on the 3d day of July, 1872, con-
vey, by deed of warranty, to the said Bowles, the said
lands hereinbefore first described, which were wholly unin-
cumbered and of the value of ten thousand dollars and
that they put said Bowles and said Julia in possession
thereof; that, at the time the said Bowles and Julia
well knew that said Bowles could not and did not intend
to discharge said lands of their liens, which were greater
than the value of the lands ; that said Bowles knew that
these plaintiffs were ignorant of the fact that without a
writing the said promise to convey by the said Bowles
could not be enforced, and that they were ignorant that the
said Julia could not be compelled to join in such convey-
ance, which facts he suppressed˙ and kept from them,
though he well knew that they relied upon him for the
protection of their rights and interests ; that, at the time,
said Bowles well knew these facts, and that said Julia
would not and did not intend to join in making said con-
veyance to said plaintiffs, and well knew that he was not
able and could not and did not intend to discharge said
liens nor make such conveyance, but so. fraudulently pre-
tended and represented, to cheat and wrong these plain-
tiffs ; that Bowles never paid any part of said liens, but af-
terward died, at the date before stated, intestate, leaving
Julia his widow, and these plaintiffs his grandchildren,

and sole heirs at law as aforesaid; that the assets of his estate are not sufficient to pay off said liens on said lands, and there is no person of whom they can obtain title thereto. Prayer that this conveyance to Bowles be set aside, cancelled and held for naught, and that the title to said lands be quieted and the possession thereof given to them and for damages in one thousand dollars.

The second paragraph of the complaint is not substantially different from the first; but the averments are not as fully made, and it prays for a rescission of the contract, for the recovery of rents, and that the title may be quieted in the plaintiffs, etc.

The third paragraph of the complaint is in the following words:

"And, for a further and third paragraph herein, said plaintiffs say, that they are the owners by complete equitable title, and entitled to the possession, of a tract of land, to wit: The west half of the north-east quarter of section 3, in township 1 north, of range 2 west, lying and being in said county and State; and that defendants now hold possession of the land without right, and for three years last past have unlawfully kept plaintiffs out of possession of the same. Wherefore they demand judgment for the recovery of the land and the legal title thereto, and two thousand dollars for being kept out of the possession, and for other proper relief."

The fourth paragraph of the complaint contains a brief and imperfect statement of the facts averred in the first, with a similar prayer.

A separate demurrer, alleging a want of sufficient facts to constitute a cause of action, was sustained to each paragraph of the complaint, upon which, the plaintiffs refusing to amend, the court rendered judgment for the defendants.

These rulings are assigned as error in this court, and present the only questions reserved in the record for our consideration.

The appellants have presented us with a careful and elaborate brief, but the appellees have not favored us with any argument.

It will be observed, upon the face of this complaint, that the representations alleged to be false are not concerning facts existing at the time they were made, except as to the fact of the great confidence the plaintiffs reposed in William A. Bowles. The representations touching the alleged exchange of lands which Bowles sought to effect were, that he would pay off the incumbrances on the lands which he proposed to convey to the plaintiffs in exchange for the lands which the plaintiffs conveyed to him, and he would convey the said lands to the plaintiffs, and that his wife, Julia, should join in the deed. These representations are not of facts existing at the time he is alleged to have made them, but were promises to be performed at a future time. It is well settled that representations, to be fraudulent, must be made concerning existing facts, and that promises made to be performed in the future, though fraudulently made and afterward broken, do not constitute fraud. The authorities upon this point are numerous. We cite some of the latest. *Fouty* v. *Fouty*, 34 Ind. 433 ; *The President and Trustees of Hartsville University* v. *Hamilton*, 34 Ind. 506 ; *Bacon* v. *Markley*, 46 Ind. 116 ; *Jagers* v. *Jagers*, 49 Ind. 428 ; *Welshbillig* v. *Dienhart*, 65 Ind. 94.

The other false representations, or rather suppressions of the truth, are that Bowles suppressed and kept from the plaintiffs the fact, which he well knew, that his promise to convey the lands which he agreed to give the plaintiffs in exchange for the land conveyed to him by them could not be enforced unless it was made in writing, and that his wife Julia could not be compelled to join her husband in the conveyance of them, which fact Bowles also well knew and concealed from the plaintiffs. These

facts are concerning the law, upon which fraud can not be predicated, however false and fraudulent they may be, and whether they are suppressions of truth or representations of falsehood. Every person is bound to know the law, and not to be deceived by its suppression or false representation. This is a necessary maxim, lying at the foundation of government and jurisprudence, and without which neither government nor jurisprudence could exist as a system.

If the alleged representations of Bowles had been made affirmatively, that his promise to convey the land could be enforced in law without being in writing, and that his wife, Julia, could be compelled by law to join him in the conveyance, however fraudulently made, they would not amount to a legal fraud. *Platt* v. *Scott*, 6 Blackf. 389 ; *Mears* v. *Graham*, 8 Blackf. 144 ; *Dickerson* v. *The Board of Commissioners of Ripley County*, 6 Ind. 128 ; *Clem* v. *The Newcastle and Danville Railroad Co.*, 9 Ind. 488 ; *Reed* v. *Sidener*, 32 Ind. 373 ; *Boland* v. *Whitman*, 33 Ind. 64 ; *The President, etc., of Hartsville University* v. *Hamilton*, 34 Ind. 506 ; *Smither* v. *Calvert*, 44 Ind. 242 ; *The City of Lafayette* v. *The State, ex rel. Jenks, post*, p. 218.

But, because there was no legal fraud committed on the appellants by Bowles, and because the statute of frauds stands in the way of the enforcement of the contract against Bowles, it does not follow that the facts stated in the first paragraph of the complaint do not constitute a cause of action. It is a familiar principle that money paid, or personal property delivered, or real estate conveyed, under a void contract or a contract which can not be enforced, may be recovered back or compensation recovered therefor. In the case before us, as the alleged express contract of Bowles can not be enforced, the implied contract arises at once that he will return the property he obtained under it, or render compensation therefor ; and we do not

see why the contract may not be rescinded as between the representatives of Bowles and the appellants, unless other rights have intervened to prevent a rescission. As, by the allegations, the appellants received nothing under the contract, they have nothing to restore before asking a rescission. And, as between the parties, they can be placed *in statu quo.*

We think the demurrer to the first paragraph of complaint should have been overruled. The following authorities will guide the court on a hearing of the case. *Shaeffer* v. *Sleade,* 7 Blackf. 178 ; *Johnson* v. *McLane,* 7 Blackf. 501 ; *Cain* v. *Guthrie,* 8 Blackf. 409 ; *Ash* v. *Daggy,* 6 Ind. 259 ; *Gatling* v. *Newell,* 9 Ind. 572 ; *Wiley* v. *Howard,* 15 Ind. 169 ; *Fisher* v. *Wilson,* 18 Ind. 133 ; *Patten* v. *Stewart,* 24 Ind. 332 ; *Matlock* v. *Todd,* 25 Ind. 128.

We think the second and fourth paragraphs of complaint are also sufficient, though not so well pleaded as the first.

What objection could be successfully alleged against the third paragraph of complaint we do not perceive. It seems to us, under the code, to be sufficient. Section 592 enacts that "Any person having a valid subsisting interest in real property, and a right to possession thereof, may recover the same by action to be brought against the tenant in possession ; if there is no such tenant, then against the person claiming the title, or some interest therein." Section 595 enacts that "The plaintiff in his complaint shall state that he is entitled to the possession of the premises, particularly describing them, the interest he claims therein, and that the defendant unlawfully keeps him out of possession." Section 596 enacts that "The answer of the defendant shall contain a denial of each material statement or allegation in the complaint; under which denial the defendant shall be permitted to give in evidence every defence to the action that he may have, either legal or equitable."

In the action of ejectment at common law, the plaintiff could recover only upon a legal title, and upon the strength of his title, not upon the weakness of the defendant's title. The complaint in this case avers merely an equitable title, with the right of possession. This may have been the ground upon which the demurrer was sustained. Whether an action to recover the possession of real property can be maintained in this State, upon an equitable title, has never been decided by this court; but the question is directly presented in this case. This court has decided that, where a legal title is averred in the complaint, it must be proved, and the complaint can not be supported by proof of an equitable title. *Rowe* v. *Beckett*, 30 Ind. 154; *Groves* v. *Marks*, 32 Ind. 319. But these cases imply that, if an equitable title is alleged, proof of an equitable title will support the complaint. A complaint, averring that the plaintiffs " are the owners, and lawfully entitled to the immediate possession of the following described real estate," without describing the kind of title, whether legal or equitable, has been held good. *Steeple* v. *Downing*, 60 Ind. 478. This court has frequently recognized, under section 596 of the code, an equitable title in the defendant as sufficient to defeat a legal title in the plaintiff, when the plaintiff is not entitled to possession, and has frequently held a counter-claim, setting up an equitable title in the defendant, as sufficient not only to defeat a legal title in the plaintiff when he has not the right to possession, but also to establish and quiet the title in the defendant. *Stehman* v. *Crull*, 26 Ind. 436; *Knight* v. *McDonald*, 37 Ind. 463; *Brown* v. *Freed*, 43 Ind. 253; *Huddleston* v. *Ingels*, 47 Ind. 498; *Dale* v. *Frisbie*, 59 Ind. 530; *The Jeffersonville, Madison and Indianapolis Railroad Co.* v. *Oyler*, 60 Ind. 383; *Buckley* v. *Taggart*, 62 Ind. 236; *Hampson* v. *Fall*, 64 Ind. 382.

When the Legislature enacted, as they did in section

592, that "Any person having a valid subsisting interest in real property, and a right to possession thereof, may recover the same by action," they certainly meant something more than merely to get rid of John Doe and Richard Roe in the common law action of ejectment. The words, "a valid subsisting interest in real property," can not be restricted, with any propriety, to mean merely a legal title. There are many valid subsisting interests in real property carrying with them the right of possession, which are not legal titles. Besides, we do not see the propriety in enacting, as in section 596, that the defendant may give in evidence every defence to the action, "either legal or equitable," and thereby establish and quiet his title, when, if he were the plaintiff, he could not do the same thing on the same state of facts. Surely, an equitable title in the defendant, set up as a counter-claim, that would defeat the legal title in the plaintiff, and establish and quiet the title in the defendant, ought to be sufficient to establish and quiet the same title, on the same state of facts, if the defendant were the plaintiff and the plaintiff the defendant. Indeed, in a counter-claim, the defendant becomes the plaintiff in all new and affirmative matter, and, as to that, the plaintiff becomes the defendant. We therefore hold that a plaintiff may recover real property upon an equitable title, when he has the right of possession. An action merely for the possession settles nothing but the right of possession, and does not interfere with the ultimate title to the property.

We think the court erred in sustaining the demurrer to the third paragraph of complaint.

The judgment is reversed, at the costs of the appellees, and the cause remanded with instructions to overrule the demurrers to the complaint, and for further proceedings.