The Farmers' Mutual Fire Insurance Association of Allen Co. v. Kryder.

Filed Nov. 16, 1892.

---

### No. 522.

### The Farmers' Mutual Fire Insurance Association of Allen County v. Kryder.

INSURANCE.—*Fire.*—*Action Upon Policy.*—*Contents of Barn.*— *Construction of Phrase.*—In an action upon a policy of insurance, covering a frame dwelling-house and contents therein, and a frame barn and contents therein, recovery can not be had for the loss of horses, killed by lightning, which were not in the barn at the time they were killed.  No liability can accrue under such a policy, within the meaning of the term "contents therein," except for such property as was actually in the barn when damaged or destroyed.

SAME.—*Representations of Agent.*— *When Company Not Bound Thereby.*—The fact that the agent of the company represented to the insured that his horses would be within the protection of the policy, whether in the barn or out, can not affect the company's liability.  The insured had

no right to rely upon such representation, and fraud can not be predicated upon it.

From the Allen Superior Court.

*W. G. Colerick*, for appellant.

CRUMPACKER, J.—The Farmers' Mutual Fire Association is a mutual fire insurance company organized under the laws of this State for the purpose of insuring farm property, exclusively, in Allen county. On the 10th day of March, 1890, Kryder became a member of said company, and it issued to him a policy for $1,400, insuring him against loss by fire or lightning, distributed as follows :

| | |
|---|---|
| Frame dwelling house | $400 |
| Contents therein | 300 |
| Frame barn | 400 |
| Contents therein | 300 |

The application described the property and distributed the insurance in the same manner as the policy. Upon the back of the policy the company's articles of association and by-laws were printed, and by apt reference in the policy they were made part of it. At the time the policy was issued Kryder had three horses in the barn, besides harness, vehicles, tools, farm implements, hay and grain. He usually kept these horses in the barn, except when they were out temporarily for ordinary use as farm horses. He sold one of the horses in the barn at the date of the policy and purchased another which he kept and used in the place of the one sold. On the 8th day of July, 1890, Kryder was hauling wheat with one of the horses he had in the barn at the date of the policy and the one subsequently purchased, and while approaching the barn with a load of wheat both of said horses, when about fifty feet from the barn, were struck and killed by a shaft of lightning. Suit was brought upon

the policy to recover the loss, and the plaintiff obtained judgment for the value of both horses.

There was no limit to the duration of the policy, provided assessments·were paid and its conditions were kept by the insured. Notice and proof of loss were duly furnished. It appears that the company's agent examined the horses in the barn before taking the risk, and represented to plaintiff that they would be covered by the policy, as well while being used out of the barn as when standing in it, but plaintiff read the policy and application before accepting the insurance.

These facts are disclosed by the pleadings and also by the special findings, and they sufficiently present the question involved in the appeal, viz: Were the horses at the time they were killed within the protection of the policy? Obscure and equivocal provisions in insurance policies are to be construed in favor of the insured. Security being the purpose of such contracts, they are to be construed with the view of effectuating that end, and regard must be had to the character of the property covered by the policy and the nature of the use that is ordinarily made of it. One who insures his property, in the absence of express restrictions in the contract, may make such use of it as it is reasonably adapted to without forfeiting the protection of the policy. Insurance upon a stock of merchandise kept for sale in the course of trade will give the insured the right to carry on his business in the ordinary way, and stock purchased to replace that which is sold will receive the benefit of the insurance. It would be unreasonable to suppose that one would insure in such a manner that he could get the benefit of the security only by suspending business. Risks of that character are termed " shifting risks," and the liability of the insurer has reference to the property on hand at the time of the loss instead of the date of the policy.

The contents of a barn of a farmer, from the nature of his vocation, are almost constantly changing. Hay and grain raised one season are sold or consumed by stock and replaced by the crop of the season following. Tools and implements wear out and decay with use and age and others are purchased as the necessities require. Animals may die or be sold and others reared or purchased to supplant them, so a long term policy upon the contents of the barn of a farmer must be issued in contemplation of these changes, and belongs to the class of " shifting risks " above noted.

These principles are well established, and if the animals destroyed in the case before us were at the time of their destruction contents of the barn within the meaning of the policy, appellee would be entitled to recover for the horse purchased after the insurance was effected, as well as the other. But no personal property is described in the policy and none is referred to therein, even in general terms. It can not be said that the insurance was limited to the property in the barn at the date of the policy, because it is apparent that the policy would cover any property such as is usually kept in agricultural barns at any time during the term of insurance. If there had been no horses in the barn when the policy was issued it would cover those afterward put in it as "contents." Where personal property is insured by descriptive expressions, though very general, and is represented in the application and policy as being " contained in " a certain house or barn or upon a certain farm, such representation amounts to a warranty that the property is at the place designated at the time the policy was executed, but not that it will remain there. Under such provisions the insured has the right to use the property in the usual manner without losing his protection, and he may remove it temporarily if it be necessary in making such use of it.

Thus, it is held, that particular property is covered by the policy, and the designation of the place of its location is descriptive and designed merely to aid in its identification. *McCluer* v. *Girard, etc., Ins. Co.,* 43 Iowa, 349; *Holbrook* v. *St. Paul, etc., Ins. Co.,* 25 Minn. 229 ; *Noyes* v. *N. W. Nat. Ins. Co.,* 64 Wis. 415; *Haws* v. *Fire Ass'n,* 114 Pa. St. 431; *Lyons* v. *Providence, etc., Ins. Co.,* 13 R. I. 347 ; *Hartford, etc., Ins. Co.* v. *Farrish,* 73 Ill. 166 ; *English* v. *Franklin, etc., Ins. Co.,* 55 Mich. 273; *Bradbury* v. *Fire Ins. Ass'n,* 80 Me. 396.

In the case of *McCluer* v. *Girard, etc., Ins. Co., supra,* it was held that a policy insuring carriages " contained in a frame barn," giving its location, covered a phaeton which was in the barn at the date of the policy, but was destroyed at a shop where it had afterwards been temporarily removed for repairs.  In the opinion, however, the court said :  " In the case at bar there is nothing to indicate that it was the intention *to insure the contents of the barn as such.*"

The case of *Bradbury* v. *Fire Ins. Ass'n, supra,* was an action upon policies which covered the plaintiff's " frame stable building, occupied by assured as a hack, livery and boarding stable, situated," etc., and his " carriages, sleighs, hacks, hearses, harnesses, blankets, robes and whips contained therein."  The suit was for the loss of a hack by fire while at a shop for repairs.  The court held there could be no recovery, because there was no particular property described in the policies of which the location could be descriptive.  In deciding the question it was said:  " The policies insure such of the plaintiff's carriages, hacks, etc., as are *contained in* his stable at the time of loss.  We can see no other way of identifying the property covered by the policies."

There is a possible conflict upon some of the propositions enunciated, between the Maine case upon the one side and several of the others above cited upon the other,

but an examination of those cases will demonstrate that the facts were clearly distinguishable from those in the case before us, and entirely different principles were applicable. There the property was described, but here no description was suggested or referred to in the policy, so far as is pertinent to this inquiry, except the barn and " contents therein." The *contents* of the barn were insured *as such,* and any item of property which was not included in that designation was not within the terms of the policy. There is no other way of discovering the property insured. Appellee's barn may have had the capacity to accommodate only three horses, and yet he may have had twenty upon his farm, which at one time or another within the existence of the insurance had been kept in the barn, and the construction contended for by appellee would require the insurance to follow and attach to all of these horses while owned by him and kept upon the farm. This would greatly enhance the risk under the lightning clause in the policy, and perhaps five times as much property as could possibly be gotten into the barn at any one time would be embraced in the term " contents therein." We can not give the policy in question any such an interpretation. It is clear, we think, upon well understood principles, that no liability can accrue under the policy within the meaning of the term " contents therein," except for such property as was actually in the barn when damaged or destroyed.

The fact that the agent represented to appellee that his horses would be within the protection of the policy whether in the barn or out can not affect appellant's liability. The policy was read by appellee and the representation was not of any material matter of fact, but of a question of law relative to the construction of the contract. Appellee had no right to rely upon such representation, and fraud can not be predicated upon it. *Burt* v. *Bowles*, 69 Ind. 1 ; *Clodfelter* v. *Hulett,* 72 Ind. 137.

Counsel for appellee have not favored us with a brief of the case.

The judgment is reversed, with instructions to the trial court to restate the conclusions of law in accordance with this opinion, and render judgment thereon in favor of appellant.

