Assurance Co. v. Norwood.

The Commercial Union Assurance Company v.
O. F. & E. R. Norwood.

No. 9191.

1. Insurance—*provision in policy rendering void in case of additional insurance not authorized by indorsement, valid.* A provision in a policy of insurance that "this entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured now has, or shall hereafter make or procure any other contract of insurance whether valid or not, on property covered in whole or in part by this policy," is valid, and enforceable when not waived or abrogated in any manner.

2. ——— *procuring additional insurance in excess of amount so authorized avoids policy.* Where there is indorsed on a policy containing such a provision written consent for the procurement of a stated amount of additional insurance, the procurement of insurance in excess of the amount authorized will avoid the policy.

3. ——— *prior parol agreement inadmissible that greater amount permitted than authorized by indorsement.* Where such a policy of insurance is indorsed with permission for $32,500 additional and concurrent insurance, and other insurance to the amount of $35,800 is taken out, $16,000 of which was procured after the date of the policy in controversy, and all in force at the time of the loss, it is incompetent for the purpose of avoiding the forfeiture of the policy to show a parol agreement between the agent of the insurance company and the insured made prior to the date of the policy, that the insured should be permitted to carry policies to the amount of $40,000; such evidence being solely for the purpose of varying the terms of the written contract made in pursuance of the prior parol agreement.

*Error from Pawnee District Court.*
*Hon. S. W. Vandivert, Judge.*

Reversed and Remanded.    Opinion Filed January 8, 1897.

This action was brought by O. F. and E. R. Norwood, partners, against the Commercial Union Assurance Company, Limited, of London, England, on a $2,500 policy of insurance on a stock of˚ merchandise

in Larned, Kansas.  Attached to the plaintiffs' petition is a copy of the policy, which contains this provision :

"This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured now has, or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

A copy of the proofs of loss furnished by the plaintiffs to the defendant was also attached to the petition, from which it appears that a slip was attached to the policy, reading as follows :  "$32,500 additional insurance allowed in form and concurrent herewith. This slip is attached to and forms a part of policy No. 100,115 of the Commercial Union Assurance Company of London, England.  Larned, Kansas, Nov. 2, 189....  J. H. ORMANDY, agent."  The proofs also show that at the time of the fire there was other insurance on the property to the amount of $35,800 under 13 policies issued by other companies at various dates from October 1, 1891, to January 26, 1892.  The property was totally destroyed by fire on the 7th of February, 1892.

The defendant answered, alleging for a third defense that the policy contained the provision above copied, and averred that the amount of concurrent insurance was expressly limited, by the indorsement on the policy, to $32,500, that the plaintiffs procured other insurance in excess of the amount permitted, and that the policy was thereby rendered void.   To this answer the plaintiff replied :

"That they contracted with the agent of the defendant, authorized by the defendant so to contract, for said insurance under a statement and agreement, made at the time and concurrent with said contract and a.

part thereof, that the total insurance, including the policy issued by the defendant, upon the property insured of the plaintiffs, should amount in the aggregate to the sum of $40,000; and that the policy of the defendant to be issued to the plaintiffs should contain an agreement for such additional and concurrent insurance as that the policy to be issued by the defendant would amount in the aggregate to the sum of $40,000; and that, thereafter, and upon the receipt of said policy, the plaintiffs relying upon said contract and agreement so made as aforesaid, received and accepted said policy from the defendant upon the belief that said agreement had been fully carried out, and that said policy permitted concurrent and additional insurance so as aforesaid agreed upon, and so relying on such contract and agreement the plaintiffs wholly neglected and failed to read said policy until after the occurrence of the fire which destroyed the property covered thereby; that, by reason thereof, and of the facts aforesaid, the defendant ought not now to be permitted to assert as a defense in this action the facts set forth in the third defense contained in said answer, for that it is estopped to deny its liability on the grounds and for the reasons therein stated."

The defendant demurred to this part of the reply, which demurrer was overruled. The case was tried to a jury. O. F. Norwood, one of the plaintiffs, testified that, in the fall of 1890, he purchased the stock of goods and made arrangements with Mr. Ormandy and Mr. Charles for insurance on it to the amount of $40,000, and that he took out policies to that amount running for one year:

"Q. This policy is dated 21st of November, 1891. Prior to that time, what, if any, talk had you with Mr. Ormandy,— this same man who signed this policy — as to insurance from that fall on, or from the time your other policies expired, which had been taken out in 1890? A. Mr. Ormandy came into the store, and wanted to know about the insurance; he came into

the store and wanted to know if he could have the insurance again, and I told him he could ; and I wanted permission to carry $40,000 of insurance on the stock.

" Q. What further was said about how much he was to carry, or, how much anyone else was to carry? A. I asked him then, after Smith had been there to see me, I asked him whether we had better let Smith have $10,000, and he said, very well, let him have $10,000.

" Q. What amount did he say he would take, if any? A. $30,000.

" Q. What arrangement, if any, was made as to how these policies were to be issued by him? A. I told him I wanted him to scatter them out, so as not to let the premiums all come due at once. I told him I wanted the premiums to come due in, say, two, three and four weeks, such like, so I would n't have the premiums to pay all at once.

" Q. You may state if he delivered you any policy of insurance afterward. A. Yes, sir, he did.

" Q. State from whom you received this policy in suit. A. J. H. Ormandy.

" Q. You may state whether, at the time you received it, you read its terms and conditions or not. A. I did not.

" Q. You may state what you did with it when you received it. A. I put it in the safe with some others that I had there.

" Q. When you told Mr. Ormandy that you wanted $40,000 of insurance for the succeeding year, in the fall of 1891, what did he say about writing that much insurance on the stock? A. He said that we could have it; that he would make the policies out to that effect; that we should be permitted to carry the $40,-000 on the stock.

" Q. You may state if you knew, at the time you received this policy, that the policy, by its terms, limited the concurrent insurance to $32,500? A. No, sir, I did not."

. He further testified that he had no further conver-

sation with Ormandy with reference to the amount of insurance ; that Ormandy brought in the policies from time to time, and that he thought he got ten policies through him.

The jury were instructed that if they found that Ormandy was the general agent of the Company, and that the plaintiffs had no notice of any limitation on his authority,—

"That if the said Ormandy agreed with the plaintiffs to issue to them policies of insurance to the extent of $30,000 upon the property covered by the policy in controversy, and that such policies should show the right to have the total insurance upon such property to the amount of $40,000 ; and if you should further find that pursuant to such agreement the policy in question was issued, and that plaintiffs received the same without knowledge of the fact that the additional insurance provided therein was limited to an amount much less than the amount of insurance upon said property, and that they, relying on said agreement, received said policy, and paid the defendant, through its said agent, Ormandy, the premium charged, then, and in such case, you are instructed that the fact that there was $37,500 of a total insurance upon the property covered by said policy would not avoid said policy, notwithstanding the conditions therein contained."

The jury rendered a general verdict in favor of the plaintiffs for the full amount of the policy, and also returned answers to special questions, finding, among other things, that the value of the goods destroyed was $50,000, and that the total amount of insurance, at the time of the fire, was $38,300. Judgment was entered on the verdict, and the defendant brings the case to this Court.

*Elrick C. Cole* and *Sylvester G. Williams*, for plaintiff in error.

*George W. Finney,* for defendants in error;   *C. N. Sterry* and *W. H. Vernon,* of counsel.

ALLEN, J.   The pleadings, evidence and instructions in this case, squarely present the question, whether a prior parol agreement made with the general agent of an insurance company concerning the amount of concurrent insurance to be carried on the property insured, controls and defeats the express terms of the policy.   It appears, without dispute, that one of the conditions of the policy was, that it should be void if the insured should procure any other insurance on the property without the consent of the insurer, and that consent was indorsed on the policy for only $32,500 of concurrent insurance.   The prior parol agreement with Ormandy with reference to the total amount of insurance to be carried on the property, and the fact that the plaintiffs had neglected to read the policy before the fire, are alone relied on to avoid the condition above mentioned.   There is no more wholesome or well-settled rule of law than that parol evidence of prior or contemporaneous conversations and oral agreements is inadmissible to contradict or vary the terms of a written contract. *Drake v. Dodsworth,* 4 Kan. 159 ; *Cornell v. St. L. K. & A. Rly. Co.,* 25 id. 613 ; *Brenner v. Luth,* 28 id. 581 ; *Hopkins v. St. L. & S. F. Rly. Co.,* 29 id. 544 ; *Windmill Co. v. Piercy,* 41 id. 763 ; *Willard v. Ostrander,* 46 id. 591 ; *Safe and Lock Co. v. Huston,* 55 id. 104.

Provisions in policies of insurance providing that the policies shall be void if other insurance be taken without the consent of the insurer, are valid.   2 May,

**1. Provision in policy rendering void in certain case, valid.** Ins. § 364. And subsequent insurance, taken out without the consent of the insurer, either expressed or implied, avoids the policy. *Allen v. Merchants' Mutual Ins. Co.*, 31 Am. Rep. 243 ; *Funk v. Insurance Association*, 29 Minn. 347 ; *Bard, Appellant, v. Penn. Mut. Fire Ins. Co.*, 153 Pa. St. 257. And taking insurance in excess of the amount consented to avoids the policy. *Allen v. G. A. Ins. Co.*, 123 N. Y. 6 ; *Union Nat'l Bank v. German Ins. Co.*, 71 Fed. Rep. 475. Counsel for the defendant in error do not question these propositions, but they insist that the Company had notice of the intention to take out insurance to the amount of $40,000, and expressly assented thereto, and that it is estopped from denying liability by the parol agreement made with Ormandy, as agent. The cases of *Am. Cent. Ins. Co. v. McLanathan*, 11 Kan. 549 ; *Continental Ins. Co. v. Pearce*, 39 id. 396 ; *Insurance Co. v. Wood*, 47 id. 521, and numerous other cases decided by courts of other States, are cited in support of this position. We are entirely satisfied with the law as declared in all the cases heretofore decided by this Court, cited on behalf of the defendants in error. The difficulty in this case is, that there is no proof, either of the existence of insurance on the property in excess of the amount authorized at the time the policy was issued, or that the Company, or its agent, was informed at any time before the fire of the full amount of insurance taken out. It appears that of the policies mentioned in the proofs of loss, five policies aggregating $17,300 were issued prior to the one sued on ; that another for $2,500 was issued on the same day, and

**2. Procuring additional insurance avoids policy, when.** that all the others bear date subsequent to the one issued by the defendant. Although it is shown that the plaintiffs had carried $40,000 insurance during the preceding

year, it nowhere appears from the evidence whether the whole or any part of the old insurance was still in force when this policy was issued. It was incumbent on the plaintiffs when seeking to charge the Insurance Company with knowledge that the property was insured at the time the policy was issued, to an amount exceeding that authorized by the consent indorsed on it, to prove the fact. This was not done; and, so far as we are informed by the evidence in the record, the whole amount of concurrent insurance, at the time this policy was issued, was $19,800. Although Norwood testified that he got 10 policies from Ormandy, the agent of the defendant, it does not definitely appear that the last one received from him rendered the whole amount of insurance on the property more than $35,000. It cannot be said then, that, at the time the policy was issued, either the Company or its agent, Ormandy, had notice of the existence of so much insurance as would avoid the policy; nor can it be said that at any subsequent time, Ormandy knew that the condition of the policy had been violated, and received or even retained the premium paid on it. There is, therefore, no element of estoppel in the case. The plaintiffs rested on the bare proposition that Ormandy had verbally agreed, prior to the date of the policy, that there should be $40,000 insurance on the property. Afterward, when the written contract was made, the total insurance was limited to $35,000. Do the prior parol negotiations control, or the subsequent written contract? Unquestionably the latter.

We have carefully considered the case of *Fireman's Fund Ins. Co. v. Norwood,* 69 Fed. Rep. 71, which arose on one of the policies of insurance on this same stock of goods, issued on the 5th of November, 1891.

We find ourselves unable to concur in the conclusion reached by that eminent Court that, "by delivering the policies with knowledge, through their agent, of the amount of insurance intended to be taken, the ·companies waived the condition as to other insurance,· and were estopped to set the same up after a loss." We think there is a clear distinction between a case where there is knowledge of the existence of a fact which would avoid the policy and this, in which it is merely claimed that there was a prior agreement ·contradicting the terms of the written contract as to the amount of insurance the party should be permitted to carry. We are better satisfied with the reasoning of Judge SANBORN, in his dissenting opinion, than with the views of the majority of the Court.

In the case of *Union Nat'l Bank v. German Ins. Co.*, ·71 Fed. Rep. 473, it was held, that " parol negotiations leading up to a written contract of insurance are merged in the contract, which cannot be controlled ·by parol evidence of the understanding of the parties." If it were claimed that the indorsement on the policy was a mistake,

3. Prior parol agreements inadmissible.

under proper averments and proof it might have been corrected, and the policy enforced ·according to the real agreement and intent of the parties. But no such claim is made in this case. The ·plaintiffs maintained from first to last that the prior ·parol agreement overturned the written contract on which they based their suit. This position is untenable.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.