## NEW YORK LIFE INS. CO. v. McMASTER.

### (Circuit Court of Appeals, Eighth Circuit.    March 21, 1898.)

### No. 976.

**1. SPECIFIC PERFORMANCE—FRAUD—MISTAKE.**
    A contract may be reformed in equity where a parol agreement was made which failed of embodiment in the subsequent written contract through the fraud of one, or the mistake of both, of the parties to it; but such agreement, and the fraud or the mistake, must be clearly proven before any such relief can be granted.

**2. INSURANCE—PRELIMINARY NEGOTIATIONS—CONSIDERATION.**
    Where an insurance company, in preliminary negotiations, agreed with an applicant, when he signed the application, to insure him for a longer time than was subsequently fixed by the policy, the oral agreement is not binding, since nothing was paid in consideration thereof, and the applicant was at liberty to reject the policy before payment of the premium. Customary negotiations for insurance do not constitute a contract, where there is no intention to contract otherwise than by policies made and delivered upon payment of the premiums.

**3. SAME—REFORMATION OF CONTRACT—ESTOPPEL.**
    Where it is sought, on the plea of fraud, to reform a policy so as to give it the legal effect claimed under an oral agreement made in preliminary negotiations, the insurance company is not estopped from denying that the actual contract was the oral agreement, unless there was on its part a willful intent to deceive, or such gross negligence as is tantamount thereto, involving some moral turpitude or breach of duty.

**4. SAME—ACCEPTANCE OF POLICIES—KNOWLEDGE OF CONTENTS.**
    An applicant for insurance, who accepts policies, the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of the terms and legal effect of these contracts. It is his duty to read and know the contents of the policies before accepting them, and, where he fails to do so, he is estopped from denying knowledge thereof, unless he proves that he was dissuaded from reading the policies by some trick or fraud of the other party.

**5. REFORMATION OF CONTRACTS—MISTAKE.**
    The mistake which will warrant the reformation of a contract must be made in common by the parties to it. A court of equity may not reform a written agreement, on the ground of mistake, so as to impose on one of the parties obligations which he did not intend to assume.

**6. WRITTEN CONTRACTS—PAROL NEGOTIATIONS.**
    No representation, promise, or agreement made, or opinion expressed, in the previous parol negotiations, as to the terms or legal effect of the resulting written agreement, can be permitted to prevail, either at law or in equity, over the plain provisions and just interpretation of the contract, in the absence of some artifice which concealed its terms, and prevented the complainant from reading it.

**7. LIFE INSURANCE—REFORMATION OF POLICY.**

An application for life insurance was signed December 12, 1893, when the agent told the applicant that one premium would carry his policy 13 months. The agent wrote on the application, "Please date policy same as application." The policy was dated December 18th, and required payment of premiums December 12th, annually, with a provision for 1 month of grace. The first premium was paid and policy delivered December 26th. December 12, 1894, a collector called for the second premium, and was told that insured did not intend to keep up the insurance, but that, if he decided to do so, he would pay the premium within the month of grace. He did not pay, and never objected to, or complained of, the policy or its terms. He died January 18, 1895; and a bill was filed to so reform the policy as to advance the term of insurance 6 days, making it run 13 months from December 18, 1893, and so cover the death on January 18, 1895. *Held*, that the relief must be denied, in the absence of proof that through the fraud of one, or the mistake of both, of the parties, the policy failed to embody the preliminary parol agreement, or that the agreement was on a valuable consideration.

## Appeal from the Circuit Court of the United States for the Northern District of Iowa.

This is an appeal from a decree which so reformed five policies of life insurance as to advance the term of insurance described in them six days, and which in this way made them cover a death which occurred on the sixth day after the policies had expired by their terms. Each of the policies was dated on December 18, 1893. By each, the New York Life Insurance Company, the appellant, insured the life of Frank E. McMaster in the sum of $1,000, for the benefit of his executors, administrators, and assigns, in consideration of his written application, "and in further consideration of the sum of twenty-one dollars and ——— cents, to be paid in advance, and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy." Each policy contained these stipulations: "If any premium is not thus paid on or before the day when due, then (except as herein otherwise provided) this policy shall become void, and all payments previously made shall remain the property of the company. After this policy shall have been in force three months, a grace of one month will be allowed in payment of subsequent premiums, subject to an interest charge of five per cent. per annum for the number of days during which the premium remains due and unpaid. During the said month of grace the unpaid premium, with the interest as above, remains an indebtedness due the company; and, in the event of death during said month, this indebtedness will be deducted from the amount of insurance." Each policy was issued upon a written application, which was dated on December 12, 1893. The policies were delivered to McMaster, and the first premiums were paid, on December 26, 1893. He never paid the premiums due on December 12, 1894, and he died on January 18, 1895, on the sixth day after the policies had expired. Fred A. McMaster, the administrator of the estate of the deceased, and the appellee in this case, exhibited his bill in the court below to so reform these policies that their terms of insurance should commence on December 18, 1893, and should expire at midnight on January 18, 1895, after the death of the insured. In his bill he set forth two grounds for the relief which he sought: (1) That, after the insured had signed his applications for these policies, the agent of the insurance company wrote into them, without his knowledge, the words, "Please date policy same as application," and the company made the annual premiums due on December 12th in each year, when they would have been due on December 18th if those words had not been inserted in the applications; and (2) that the contract for the insurance was that the insured should have policies of the kind which he received, which should remain in force 13 months from the time when the first annual premiums were paid, without further payments, and that the policies actually delivered remained in force only 12 months and 17 days after their delivery. The answer denied the averments of the bill, and these facts were established by the evidence: In order to induce the insured to make his applications for the policies, the solic-

itor of the company told him that its policies gave him 13 months of insurance for the first annual premium, and in answer to this direct question. "Did you, or did you not, agree for the company that they would furnish him a policy that would be good for thirteen months, and that, in order to secure the thirteen months of insurance, all that he had to do was to pay one premium?" he answered, "Yes, sir; I stated to Mr. McMaster that the one premium he paid carried his policy for full thirteen months." McMaster signed the applications for the policies at the time of this conversation, on December 12, 1893, but he did not pay any premiums until December 26, 1893; and there is no evidence that, at any time before the policies were delivered, on December 26, 1893, he ever agreed to take the insurance, or to pay any of the premiums. After the applications were signed, the agent who procured them wrote into them the words, "Please date policy same as application," for the purpose of securing a bonus or extra commission which the company allowed its agents on December business. In November, 1894, written notices were sent to the insured by the company that his second premium on each policy would be due on December 12, 1894. On December 11 or 12, 1894, a collector called on him for his second annual premiums, and asked him to pay them. He replied that he did not intend to keep the insurance in force, and did not care to pay the premiums. The collector told him that he had 30 days of grace in which to make the payments, and told him when the days of grace would expire. He answered that, if he decided to keep any of the insurance, he would come to the office and pay the premiums before that date. He did not come, and he never objected to, or complained of, the policies or their terms. Upon this record the decree which is challenged by this appeal was rendered.

W. E. Odell, for appellant.

F. E. Gill, for appellee.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

In form, this is a suit in equity to reform written contracts. In fact, it is a bald attempt to supersede written agreements with the parol negotiations which preceded and induced them. It is contended that the insurance company agreed in the preliminary negotiations that it would issue policies which would insure the life of the deceased for 13 months, in consideration of the payment of the first annual premiums, and that, either by mutual mistake or by the fraud of the company, policies were issued which insured his life for only 12 months and 17 days, in consideration of those premiums. A contract may be reformed in equity where a preliminary parol agreement is made, which fails of embodiment in the subsequent written contract through the fraud of one, or the mistake of both, of the parties to it. But the oral agreement and the fraud or the mutual mistake must be clearly proved before any such relief can be granted. The chief difficulty with this case is that neither the oral agreement nor the fraud nor the mutual mistake are established by the evidence. It is an indispensable requisite of a binding agreement that it should have a good or a valuable consideration. If the insurance company agreed with the deceased when he signed his applications that it would issue policies which would insure his life for 13 months, in consideration of the payment of the first annual premiums, there was no consideration for that agreement, because McMaster neither paid nor agreed to pay anything for this

preliminary promise. He merely signed applications for policies, and, until he received them and paid his premiums upon them; he was at perfect liberty to reject the insurance and to refuse the policies. Before these policies were delivered, on December 26, 1893, no suit could have been maintained against him for the premiums, or for a specific performance of any agreement to take any insurance or to accept any policies, because he had never made any such agreement, and had never promised to pay any premiums. Nor could he have maintained an action against the insurance company upon its agreement to issue policies that should give him insurance for 13 months, because that agreement was without consideration and void. There were, as is customary in life insurance cases, negotiations, but no contract, and no intention to contract, otherwise than by policies made and delivered upon the simultaneous payment of the premiums; and the agreement upon which the appellee counts was nothing more than a representation or promise, without consideration, as to what would happen in the future. Society v. McElroy, 49 U. S. App. 548, 28 C. C. A. 365, and 83 Fed. 631, 638; Kendall's Adm'r v. Insurance Co., 10 U. S. App. 256, 263, 2 C. C. A. 459, 461, and 51 Fed. 689, 691; Heiman v. Insurance Co., 17 Minn. 153, 157 (Gil. 127); Markey v. Insurance Co., 103 Mass. 78; Hoyt v. Insurance Co., 98 Mass. 539, 543; Markey v. Insurance Co., 118 Mass. 178, 194; 1 May, Ins. (3d Ed.) § 56.

Nor is there any proof of fraud in this record. The fraud upon which reliance is placed here is pleaded as the basis of an estoppel. The claim is that the insurance company is estopped from denying that the actual contracts were the oral agreement for insurance for 13 months from December 26, 1893, and that the written contracts should be so reformed as to have this legal effect, because the solicitor promised that such would be the agreements. But a willful intent to deceive, or such gross negligence as is tantamount thereto, is an essential element of such an estoppel. There must be either some moral turpitude or some breach of duty. Bank v. Farwell, 19 U. S. App. 256, 262, 265, 7 C. C. A. 391, 394, 396, and 58 Fed. 633, 636, 639; Henshaw v. Bissell, 18 Wall. 255, 271. The deceit of its victim, and consequent damage, are essential elements of actionable fraud. If the acts of this insurance company did not deceive the insured, or if he was not induced thereby to change his position to his damage, no fraud which will warrant relief was perpetrated upon him. Before any cause of action for a reformation or avoidance of these policies can be maintained on the ground of fraud, convincing proof must be furnished that by some trick, artifice, or deceit of the company, the insured was induced to accept his policies, and to pay his first premiums, in the belief that they insured his life, for 13 months from December 26, 1893. But he received the policies on that day, and he retained them in his possession until he died, on January 18, 1895. Their provisions are plain, clear, and free from all ambiguity and doubt. They stipulate that the company insures his life for 12 months and 17 days from December 26, 1893, only, and that at the end of that time they shall become void unless the second annual premiums are paid. He could not have

been deceived as to the terms or legal effect of these contracts, if he read them. It was his duty to read and know the contents of the policies when he accepted them. It is true that the evidence is that he did not read them, but the legal effect of his acceptance is the same as if he had read them. He had the opportunity to read and to learn their contents, and, if he did not, it was his own gross negligence, and no act of the insurance company or its agent that concealed them and misled him as to their effect. The statement of the agent 14 days before the deceased received the policies that they would insure him for 13 months from the payment of the first premiums was not a statement of an existing fact. It was not calculated to impose upon him, or to prevent him from reading his policies, and learning for himself whether this promise had been kept or broken. It was not a fraudulent representation, because fraud can never be predicated of a promise or a prophecy. Railway Co. v. Barnes, 27 U. S. App. 421, 12 C. C. A. 48, and 64 Fed. 80; Sawyer v. Prickett, 19 Wall. 146, 163; Kerr, Fraud & M. (Bump's American Notes) 85, note 3. Neither the company nor its agent, therefore, made any representation or promise, or used any artifice or deceit, to prevent the insured from learning the terms of his policies. Their contents were not concealed. They were not misrepresented. The deceased must accordingly be conclusively presumed to have known their terms when he accepted them. If one can read his contract, his failure to do so is such gross negligence that it conclusively estops him from denying knowledge of its contents. unless he was dissuaded from reading it by some trick, artifice, or fraud of the other party to the agreement. Railway Co. v. Belliwith, 55 U. S. App. 113, 28 C. C. A. 358, and 83 Fed. 437, 440. Contracts for insurance are no exceptions to this rule. Morrison v. Insurance Co., 69 Tex. 353, 359, 6 S. W. 605; Quinlan v. Insurance Co., 133 N. Y. 356, 365. 31 N. E. 31; Wilcox v. Insurance Co., 85 Wis. 193, 55 N. W. 188; Fuller v. Insurance Co., 36 Wis. 599, 604; Herbst v. Lowe, 65 Wis. 316, 26 N. W. 751; Hankins v. Insurance Co., 70 Wis. 1, 2, 35 N. W. 34; Herndon v. Triple Alliance, 45 Mo. App. 426, 432; Palmer v. Insurance Co., 31 Mo. App. 467, 472; Insurance Co. v. Yates, 28 Grat. 585, 593; Ryan v. Insurance Co., 41 Conn. 168, 172; Barrett v. Insurance Co., 7 Cush. 175, 181; Holmes v. Insurance Co., 10 Metc. (Mass.) 211, 216; Insurance Co. v. Swank, 12 Ins. Law. J. 625, 627; Insurance Co. v. Hodgkins. 66 Me. 109, 112; Insurance Co. v. Neiberger, 74 Mo. 167, 173; Beach, Ins. (1895) § 414, and cases cited. The legal conclusion that the insured knew the terms of his policies, because he had an opportunity to know them, and it was his duty to do so, is in accordance with the actual fact. The proof is clear and indisputable that before December 13, 1894, he was notified that his second annual premiums fell due on December 12, 1894, and that his policies would expire on January 12, 1895, unless he paid them, and that he replied that he did not intend to keep the insurance in force, and did not care to pay them. This record therefore presents no evidence that the insurance company or its agent made any representation of which fraud can be predicated, and it presents no evidence that the

insured was deceived into taking his policies by any misrepresentation of the company or its agent.

The case is equally barren of evidence of a mistake in drafting the policies. The mistake which will warrant the reformation of a contract must be a mutual mistake. A court of equity may not reform a written agreement, on the ground of mistake, so as to impose on one of its parties obligations which he did not intend to assume when he made it. Insurance Co. v. Henderson, 32 U. S. App. 536, 546, 16 C. C. A. 390, 394, and 69 Fed. 762, 767. It is conceded by counsel for appellee that the act of the solicitor of the insurance company in directing the policies to be dated on the same day as the applications was the act of the company. The agent of the company, and the company itself, therefore, intended to make the term of insurance in these policies exactly what it was made by their terms, and there was no mistake on their part in drafting and delivering the contracts. The result of a careful examination of the record is that there was no binding, legal agreement before the policies were delivered, no fraud which induced the insured to accept them, and no mutual mistake in drafting or delivering them; and the policies cannot be reformed on any of these grounds.

It is strenuously insisted, however, that the statement of the solicitor of the company that its policies would give insurance for 13 months, in consideration of the payment of the first annual premiums, was a construction of the terms of the policies which the company is estopped from denying, in the absence of fraud and mistake, and that the appellee is entitled to recover the indemnity promised, on this ground, whether he is entitled to a reformation of the policies or not. The case of Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, is cited and relied upon in support of this proposition. In that case the agent of the insurance company wrote the answers of the applicant to the questions propounded in his application. One of those questions was, "Has the said party [the applicant] any other insurance on his life?" When the agent asked this question, the applicant told him that he had certain certificates of membership in certain co-operative societies, which he named, and that he did not know whether they would be considered insurance or not. The agent told him emphatically that he did not consider that insurance, and that the proper answer to the question was "No;" and he thereupon wrote the answer, "No other," into the application, and the applicant signed it. The company undertook to defend an action on the policy on the ground that this answer was false, because the applicant had insurance in the co-operative societies; and the supreme court held that inasmuch as the agent of the company, after hearing all the facts, dictated and wrote the answer, the company was estopped from claiming that it was false. Indeed, it is well settled that an insurance company is estopped from defending against a loss on the ground that the policy is avoided by a false answer in the application, where the insured told the agent the truth, and the latter wrote the falsehood into the application himself. The false statement then becomes the statement of the company, and not of the insured, and it may not plead its own wrong, to forfeit its policy. Laclede Mfg. Co. v. Hart-

ford Ins. Co., 19 U. S. App. 510, 521, 9 C. C. A. 1, and 60 Fed. 351; Insurance Co. v. Robison, 19 U. S. App. 266, 7 C. C. A. 444, and 58 Fed. 723; Insurance Co. v. Russell, 40 U. S. App. 530, 553, 23 C. C. A. 43, 54, and 77 Fed. 94, 106; Insurance Co. v. Wilkinson, 13 Wall. 222, 225; Insurance Co. v. Mahone, 21 Wall. 152; Insurance Co. v. Snowden, 12 U. S. App. 704, 7 C. C. A. 264, and 58 Fed. 342; Kausal v. Association, 31 Minn. 17, 21, 16 N. W. 430; Dietz v. Insurance Co., 31 W. Va. 851, 8 S. E. 616.   This rule, however, is very far from the proposition that an opinion expressed, or a promise or agreement made, in the previous parol negotiations, to the effect that the subsequent written contract which results from them will have a certain legal effect, must prevail over the plain terms and right construction of the actual, written agreement, which is subsequently made and accepted.   The former statement is based on existing facts, completely disclosed, while the latter is a mere opinion or promise as to what the future will bring forth.   The former is the statement of the effect of known and existing conditions, which, if false and injurious, is fraudulent, while the latter is a mere promise or prophecy, which cannot be fraudulent, even if it is a mistake.   The latter proposition is the converse of the established rule that written contracts shall prevail over the previous oral negotiations from which they result.   Nevertheless, it has a familiar sound.   It has been repeatedly presented to, and has repeatedly received the condemnation of, this and other courts.   In Laclede Mfg. Co. v. Hartford Ins. Co., 19 U. S. App. 510, 513, 520, 9 C. C. A. 1, 3, 8, and 60 Fed. 351, 353, 358, the agent of the insurance company told the insured, in the previous preliminary negotiations, that the policy upon seven boilers, which he was soliciting him to take, would certainly cover any additional boilers which the insured might subsequently acquire, provided only seven were in operation at a time.   The insured took the policy in reliance upon this representation.   After he had obtained it, he acquired additional boilers, one of which exploded while only seven were in operation.   He brought an action upon the policy for the explosion, but it failed.   This court declared:

"That the opinion that Eickhoff [the agent] expressed, or, if it could be so called, the promise that he made, before the policy was issued, that it would cover all after-acquired boilers, when but seven were in use, was merged in the written contract evidenced by the policy, and was not available to the plaintiff in this action, either as a representation, an agreement, or an estoppel."

In Insurance Co. v. Henderson, 32 U. S. App. 536, 540, 543, 547, 16 C. C. A. 390, 391, 393, 395, and 69 Fed. 762, 764, 766, 768, the agent of the insurance company informed the insured, in the previous parol negotiations which led to the contract, that the policy he would receive would cover his death by assassination.   The policy subsequently delivered excepted from the risks against which it insured "intentional injuries inflicted by the insured or any other person." The insured was shot from ambush.   A suit was brought to reform the policy so as to cover the risk which the solicitor had assured the deceased would be covered by the policy.   But this court directed the dismissal of the bill, and held that:

"When the risks intended to be insured against are clearly described in the policy, and the insured has a full and fair opportunity to read the instrument, the company will not be bound by representations made by its agent, in good faith, that the policy covers risks that are not in fact within its provisions."

In Thompson v. Insurance Co., 104 U. S. 252, 259, the policy provided that it should be void on the nonpayment of the note taken for the premium; and the supreme court held that a plea that a parol agreement was made, at the time of the giving and accepting of the note and policy, that the policy should not become void for the nonpayment of the note, but should only be voidable at the election of the company, was bad. Mr. Justice Bradley, in delivering the opinion of the court, said:

"An insurance company may waive a forfeiture, or may agree not to enforce a forfeiture; but a parol agreement, made at the time of issuing a policy, contradicting the terms of the policy itself, like any other parol agreement inconsistent with a written instrument made contemporary therewith, is void, and cannot be set up to contradict the writing."

In Insurance Co. v. Mowry, 96 U. S. 544, 547, the policy provided that it should be void and wholly forfeited if the premiums were not punctually paid. The agent who procured the policy agreed with the insured that the company should give notice when the premiums fell due, but this agreement was not contained in the policy. The company failed to give the notice, and the insured failed to pay the premium. The agreement of the agent before the policy issued was claimed to be an estoppel of the company against insisting upon the forfeiture of the policy. Mr. Justice Field, in delivering the opinion of the court, said:

"All previous verbal arrangements were merged in the written agreement. The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any controversy or question respecting them. * * * An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. * * * The doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power, in such cases, to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine, carried to the extent for which the assured contends in this case, would subvert the salutary rule that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent. White v. Ashton, 51 N. Y. 280; Bigelow, Estop. 437, 441; White v. Walker, 31 Ill. 422; Faxton v. Faxon, 28 Mich. 159."

In Assurance Co. v. Norwood, 57 Kan. 610, 611, 613, 615, 617, 618, 47 Pac. 529, 532, the agent of the insurance company agreed with the insured, in the preliminary negotiations, that they should be permitted to carry $37,500 additional insurance, and promised to make out the policies to that effect. In reliance upon this agreement and promise, the insured neglected to read the policies when they were delivered. They were for $2,500 each, permitted only $32,500 concurrent insurance, and provided that they should be void if the in-

sured procured more without the consent of the company. The insured obtained $37,500 concurrent insurance, and the company defended an action on one of the policies on the ground that it was avoided by this overinsurance. The insured pleaded the previous oral agreement and promise, and alleged that the company was thereby estopped from making this defense. The supreme court of Kansas held that the plea could not be sustained, and that there could be no recovery upon the policy. In Union Nat. Bank v. German Ins. Co., 18 C. C. A. 203, 71 Fed. 473, the circuit court of appeals for the Seventh circuit came to a like conclusion. In Association v. Kryder, 5 Ind. App. 430, 435, 31 N. E. 851, the solicitor of the company promised the insured in the prior parol negotiations, that the policy of insurance on his barn and its contents would insure his horses, whether they were in or out of the barn. The horses were killed by lightning in the field near the barn; and, to the plea that the association was bound by the construction which the agent gave to the policy, the court answered:

"The policy was read by the appellee, and the representation was not of any material fact, but of a question of law, relative to the construction of the contract. The appellee had no right to rely upon such representation, and fraud cannot be predicated upon it." Burt v. Bowles, 69 Ind. 1; Clodfelter v. Hulett, 72 Ind. 137.

In Casualty Co. v. Teter, 136 Ind. 672, 673, 676, 679, 36 N. E. 283, the agent represented to the insured that a policy of insurance against accidents of travel as a passenger on a public conveyance, which he was soliciting him to take, would cover accidental injuries which he might receive while he was caring for and selling a load of horses which he was about to transport to market by rail. He fell from a hayloft in a livery barn while caring for his horses in a market town to which they had been transported, but the supreme court of Indiana held that he could not recover.

It is useless to review other decisions. This proposition is founded in reason, and sustained by the authorities, and it should be deemed to be the settled law of the land: No representation, promise, or agreement made, or opinion expressed, in the previous parol negotiations as to the terms or legal effect of the resulting written agreement, can be permitted to prevail, either at law or in equity, over the plain provisions and just interpretation of the contract, in the absence of some artifice or fraud which concealed its terms, and prevented the complainant from reading it. Laclede Mfg. Co. v. Hartford Ins. Co., 19 U. S. App. 510, 513, 520, 9 C. C. A. 1, 3, 8, and 60 Fed. 351, 353, 358; Insurance Co. v. Henderson, 32 U. S. App. 536, 540, 543, 547, 16 C. C. A. 390, 391, 393, 395, and 69 Fed. 762, 764, 766; Thompson v. Insurance Co., 104 U. S. 252, 259; Insurance Co. v. Mowry, 96 U. S. 544, 547; Assurance Co. v. Norwood, 57 Kan. 610, 611, 613, 47 Pac. 529, 530, 531, 532; Association v. Kryder, 5 Ind. App. 430, 435, 31 N. E. 851; Union Nat. Bank v. German Ins. Co., 18 C. C. A. 203, 71 Fed. 473; Casualty Co. v. Teter, 136 Ind. 672, 673, 676, 679, 36 N. E. 283; Burt v. Bowles, 69 Ind. 1; Clodfelter v. Hulett, 72 Ind. 137; Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. 276, 290; Insurance Co. v. Lyman, 15 Wall. 664; Pearson v. Carson, 69 Mo.

550; Insurance Co. v. Neiberger, 74 Mo. 167; Lewis v. Insurance Co., 39 Conn. 100.

Under the evidence presented in this record, the appellee cannot recover upon these policies, either at law or in equity; and the decree below must be reversed, and the case must be remanded to the court below, with directions to dismiss the bill.    It is so ordered.