Home Fire Ins. Co. v. Wood.

50  381
t52  398

## HOME FIRE INSURANCE COMPANY OF OMAHA V. RICHARD WOOD ET AL.

### FILED JANUARY 19, 1897.   NO. 6863.

1. **Mistake:** REFORMATION OF CONTRACT. To justify the reformation of a written contract for mistake, the mistake must be mutual and be established by clear, convincing, and satisfactory evidence.

2. **Insurance:** REFORMATION OF POLICY. Evidence examined, and *held* insufficient to authorize the reformation of the policy in suit.

3. ———: OTHER POLICIES: INDORSEMENT. Where an insurance company issues a policy with knowledge of other insurance on the same property, it cannot escape liability on the ground that no memorandum of the prior insurance was indorsed on the policy.

4. ———: ———: NOTICE. A statement by the insured to the agent of the insurer that the former intends to procure additional insurance on the property is not notice of the existence of such additional insurance when obtained.

5. ———: ———: BREACH OF CONTRACT. A fire insurance policy provided that it should be void if other insurance was subsequently obtained without the consent of the company. The insured did thereafter procure other insurance on the same property, without such consent or knowledge of the insurer of its existence. *Held,* That there was a breach of the condition of the first policy, and a recovery cannot be had thereon.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J. *Reversed.*

*B. G. Burbank* and *Jacob Fawcett,* for plaintiff in error.

*Charles B. Keller, contra.*

NORVAL, J.

This was a suit to reform a policy of fire insurance, and for judgment on the policy when so corrected and reformed. The court found for plaintiffs, reforming the policy and entering judgment for the full amount of insurance, with interest and costs. The only assignment urged for a reversal is the one which challenges the suf-

ficiency of the evidence to sustain the finding and judgment.

The facts may be briefly summarized thus: Wright Bros., on and for some time prior to June 27, 1891, were, and had been, engaged in the mercantile business at Fairfield, and B. F. Hyde was the soliciting agent at said place for the Home Fire Insurance Company of Omaha, with power to solicit applications for insurance, transmit them to the home office at Omaha, where the policies were written, and on the receipt of the policies by Mr. Hyde, he delivered the same to the insured and collected the premiums. On the date aforesaid, Hyde solicited insurance of Wright Bros. on their stock of merchandise and store fixtures in the sum of $1,000 for the period of one year. The policy was prepared and executed by the proper officers of the defendant company in Omaha, after which it was transmitted to Mr. Hyde, who thereupon delivered the same to Wright Bros., and collected the premium thereon. The policy contained a provision that "this policy shall be void * * * if there is now, or shall hereafter be, obtained any other insurance (whether valid or not) on said property or any part thereof;" and further, that "no agent or employe of this company, or any other person or persons, have power or authority to waive or alter any of the terms or conditions of this policy, or make any indorsements thereon, except only the secretary of this company, and any waiver or alteration by him must be in writing, and must be signed by him." The property covered by the policy was wholly destroyed by fire on December 8, 1891, and at that time the insured were carrying a total insurance of $5,500, $2,000 of which was in force when this policy was given, and Hyde then knew it, but the policy in suit contained no stipulation permitting other concurrent insurance. After the loss the policy was assigned to plaintiffs. The company defends on the ground of the obtaining additional insurance, subsequent to the issuance of the policy, without notice thereof to it, or making any request that consent

therefor be given.    On the other hand, plaintiffs alleged
in their petition, in effect, that at the time the insurance
was written it was agreed between Wright Bros. and the
company that plaintiffs were to be permitted to carry
$5,500 total insurance on the property; that without any
fault or neglect of theirs, but through design or mistake
of the defendant, or its agent, the company omitted to
write in the policy, or to indorse thereon, any provision
for concurrent insurance, and that said policy was re-
ceived and the premium paid Wright Bros. in good faith
without reading the same, believing that the policy con-
tained the proper and necessary provisions permitting
concurrent insurance.    This averment was put in issue
by the answer.

The question involved is whether the evidence was suf-
ficient to justify the reforming of the policy relative to
additional insurance.    The only testimony adduced on
that branch of the case by plaintiffs was given by B. J.
Wright, one of the insured, and is as follows:

Mr. Hyde came to me several times before we made
out the policy, or gave him a right to make it out, and
wanted to take out a policy in the Home for $1,000, and
tried to get us to take out more in that company.

Mr. Fawcett: State what he said.    Don't give your
conclusion.

A. Well, he said he wanted us to take out more in-
surance,—make the policy larger; and at that time I told
him that I did not see fit to do that, but we intended to
replenish the stock and take out more insurance after-
wards, which we did, and stated to him about the amount
that we intended to carry, which at that time I told him
that we intended carrying about $5,500; and a few days
after he had been several times, I told him to make out a
policy for $1,000, and told him the amount of insurance
we had then, and what we intended to get.

Q. How much insurance did you then have upon that
stock at the time this policy was written?

A. $2,000.

Q. State whether or not you told Mr. Hyde what companies that insurance was in, and whether you showed him the policies or not.

A. I do not remember whether I showed him the policies or not, but think I told him the companies it was in, and the amount.

Q. And how much insurance do you swear that you told Mr. Hyde at that time that you wanted to carry on that stock, and intended to carry on that stock?

A. $5,500.

Q. What, if anything, did you say to Mr. Hyde with reference to renewing the policy in the German-American, and taking it out for $1,500 instead of $1,000?

A. Why I think I told Mr. Hyde about the running out of this policy that Mr. Randall carried, and that I was going to renew it with an additional amount of $500 or $1,000. I do not remember just the words that we used at that time; we had several talks about it.  *  *  *

Q. When you received this policy what was done with it?

A. I received it and put it in the safe with the balance of them.

Q. State whether or not you examined or read over that policy at the time you received it.

A. No, sir; I did not.

Q. When did you first read over and examine that policy?

A. The next day after the fire.

Cross-examination:

Q. Did you ever at any time, after this policy was delivered to you, direct the defendant company or any of its agents to make any indorsements upon the policy for additional insurance?

A. I did not.

Q. Did you ever at any time after you put on the additional $500 insurance in the German-American, and before the fire, notify the defendant company, or any of its agents, that you had done so?

A. No, sir; I did not.

Q. Did you ever at any time after obtaining that additional $500 insurance in the German-American request the defendant, or any of its agents, to indorse permission for such additional insurance upon your policy?

A. Not that I remember of.

It is also admitted of record that prior to the fire no request was made of the company by the insured to indorse any provision upon the policy permitting additional insurance. B. F. Hyde testified that he was a soliciting agent of the defendant, issued no policies for them, and made no indorsements thereon, and had no authority to do so; that he had no recollection, at the time he solicited this insurance, of B. J. Wright telling him it was the intention to carry $5,500 insurance on the property and wished to arrange to carry that amount; "It has occurred in my mind that I never had any conversation about it, except at the time of soliciting the insurance he showed me two policies of $1,000 each;" that he informed the company when he made the daily report of the risk of the amount of insurance on the property. A. C. Hull testified that he was special agent of the defendant, empowered to inspect risks, approve or reject them, in the south half of the state; that on June 27, 1891, he visited the store of Wright Bros. at Fairfield and inspected and approved their risk; that on that occasion one of said firm told him they were carrying $2,000 other insurance besides the $1,000 they were applying for that day; that $3,000 was the total amount they asked for or wanted to carry on this stock; that there was nothing said about any additional insurance above $3,000.

That a court of equity will relieve against a mutual mistake there can be no question; but it will not reform a policy of insurance or other contract on the ground of a mistake of fact, unless the proof is clear, convincing, and satisfactory, and free from reasonable controversy. The burden is upon the party alleging the mistake to establish it upon the trial. (*Blake Opera House Co. v. Home Ins. Co.*,

29

73 Wis., 667; *Cox v. Woods*, 67 Cal., 317; *National Fire Ins. Co. v. Crane*, 16 Md., 260; *Steinberg v. Phœnix Ins. Co.*, 49 Mo. App., 255; *Smith v. Allen*, 14 So. Rep. [Ala.], 760; *Northfield Farmers Township Mutual Fire Ins. Co. v. Sweet*, 46 Ill. App., 598; *Osmundson v. Thompson*, 57 N. W. Rep. [Ia.], 863; *Howland v. Blake*, 97 U. S., 624.) In the last case cited above Mr. Justice Hunt, in discussing the question of the reformation of written instruments upon the ground of mistake, observes: "In each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument. If the proofs are doubtful and unsatisfactory, if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. A judgment of the court, a deliberate deed or writing, are of too much solemnity to be brushed away by loose and inconclusive evidence."

A careful reading and consideration of the proofs on behalf of plaintiffs convinces us that it falls far short of establishing that a mistake was made in writing the policy in its not providing for subsequent concurrent insurance. It probably should have contained an indorsement of the $2,000 prior insurance; but that it failed in this respect did not affect the rights of the insured, since the company, at the time this risk was written, had notice of the existence of such prior insurance. (*Home Fire Ins. Co. v. Hammang*, 44 Neb., 567.) It does not appear from Mr. Wright's testimony that there was any agreement or understanding between himself and defendant's agent, Mr. Hyde, that the policy should provide for $5,500 concurrent insurance. The most that can be claimed for Mr. Wright's testimony is that he informed the company's agent of the intention of his firm to replenish the stock, and afterwards take out additional insurance, so as to make the total amount of insurance on the property about $5,500. Not until the stock was increased by new purchases was it proposed to take out other policies. The

insured should have applied for and obtained an indorsement upon the policy in suit for additional insurance after the stock was replenished. The evidence of Wright, standing alone, falls far short of establishing a mutual mistake, such as would justify a court of equity in reforming the policy. This being true, it is unnecessary to discuss the evidence on behalf of the insurer.

It is undisputed that the company had no notice of the additional insurance. The statement of Mr. Wright to defendant's agent when the risk was solicited, that the former intended to take out additional insurance on the property, is not notice that the insured had procured such additional insurance. (*Eagle Fire Co. of New York v. Globe Loan & Trust Co.*, 44 Neb., 380.) The procuring of the subsequent insurance by the insured on the property without the knowledge of the defendant or its written consent therefor being indorsed on the policy is in violation of the clause therein forbidding additional insurance, and avoids the policy. (*German Ins. Co. v. Heiduk*, 30 Neb., 296; *Hughes v. Insurance Co. of North America*, 40 Neb., 626.) From this it follows that the district court erred in reforming the policy, and entering judgment thereon. The judgment will, therefore, be reversed and the cause remanded for further procedings.

REVERSED AND REMANDED.