Bissell, J.,
delivered the opinion of the court.
This not uncommon suit on a fire insurance policy presents some very novel and unusual features. The policy was issued to E. H. Smith, and covered property which belonged-to his wife, Mary H. The insurance was taken out when the property was in the Smith hotel, and it was afterward *122 burned, in the Arlington hotel. Whatever may be the opinion of the court respecting many of the questions presented, this suggests what we regard as fatal to the recovery. All matters whether of fact or of law will be omitted save as they bear on the two propositions which will be decided. On the 28th day of December, 1894, the Connecticut Fire Insurance Company through its agents, Atkinson and Reeves in Montrose, issued a policy for $500 to E. II. Smith on sundry household goods which were located in a building on certain designated premises in that town. The building was described as one occupied as a hotel by Smith, and known as Smith’s hotel. It contained many of the covenants and conditions which are found in most fire policies. It covered only the interest of the assured, prohibited other insurance save as consented to in the policy, forbade the removal and transfer of the property, declared void all changes hi the terms and conditions of it without the consent of the company in writing indorsed thereon, and contained the usual covenant that there should be no waiver of any condition unless it should be thus indorsed. This summary of the conditions is ample for our purpose since there is no unusual language found in the policy which requires special construction.
The parties do not disagree as to the property insured, as to its ownership, nor as to its transfer from the Smith hotel to the Arlington. The suit was brought in the name of Mrs. Smith who was the owner, and of necessity sundry matters were alleged in order to show the liability of the company for the destruction of property which belonged to her on a policy which had been issued to her husband. Generally speaking, the complaint alleged that Mrs. Smith was the owner at the time the policy was under-written, but that the contract was made out in the name of her husband through the mistake of the agents, and without any fault on her part, and with knowledge on the part of the agents that she was the owner. She likewise charged that afterwards, and in March, 1895, before the fire, she demanded of the defendant *123 company a correction of the mistake, that the agents agreed to correct it and to have it transferred to the plaintiff. She claimed to have relied on this promise and did nothing further before the fire happened and the loss occurred. The only trouble with this theory is that the proof does not sustain the allegations. It appeared on the trial, and to this extent there was no disagreement between the witnesses that for at least one, and probably two years prior to the time the present policy was issued, like policies for a similar sum and on the same goods, located in the same place and running to the same person had been issued, and the one in suit was but a renewal of the others. We therefore have an antecedent existing insurance issued by the Connecticut company on the same property to the same person. No complaint whatever was made by Smith respecting it, or by Mrs. Smith, but the contracts were accepted by the insured with no request to the agents to change the policy in any-respect either as to party or as to terms. It may likewise be said to be very clearly established by the evidence that the agents had no knowledge respecting the ownership either at the time this policy was issued, or for a year or two theretofore, and probably none on the 29th of March, at the time the plaintiff alleged the agents agreed to make the change. Manifestly, this proof did not even tend to show that the agents had made any mistake, or that if there was a mistake, it was one for which the company was in any wise responsible. At the trial there was some testimony given by Mr. Smith to the point that when the property was about to be removed from the Smith hotel to the Arlington, Atkinson, and one, Upton, who represented some other companies, were at the Arlington with reference to a change in some policies theretofore written by Upton, and also with reference to this policy which as will be seen hereafter was to be altered so as to cover the property in the Arlington in place of the other hotel. Smith attempted to give some testimony tending to show that there was some statement respecting the ownership of the property at that date, and that the agent Atkinson was informed then that Mrs. *124 Smith owned the property and the alteration desired would extend not only to the location, but would cover the matter of title. This however was not clearly established by Smith’s testimony, and it was completely overthrown by the testimony which Upton and Atkinson gave. Upton testified there was nothing said about the ownership of the property, and that whatever could be taken to refer to it, could in any event, be only an inference from a discussion respecting the change in the policies which ran to Mrs. Smith and a permission for $2,000, concurrent insurance in place of $1,500, which had theretofore been the limit and the transfer of the Connecti-' cut policy to the Arlington hotel. It might possibly be a matter of inference that when they were talking about the transfer of the Connecticut policy to cover the property in the Arlington hotel, there would be no relevancy to this discussion as to the increase of the concurrent insurance permitted on the policies which had been issued to Mrs. Smith, unless the Connecticut policy was likewise to run to her. This is the only basis on which the contention can be supported. This is too remote however to support a judgment against a company for the loss, when both Upton and Atkinson directly testified that nothing was said about the ownership of the property at the time, and what they say about it is totally undisputed. We therefore conclude there was no evidence tending to show that there was any agreement to insure Mrs. Smith’s property either in the Smith hotel or the Arlington, and no legitimate evidence which established, and scarcely any which even tended to the point that the policy had been by mistake so written as to insure Mr. Smith’s property and not that which belonged to his wife, Mary H. It is true Smith said that originally the policy ran to his wife on the property in the Smith hotel, but there was nothing whatever to show that Smith did not likewise have property there, and nothing which even tended to bring home to the agents knowledge that the particular property covered by the policy belonged to the wife rather than to the husband. We therefore conclude there was no evi *125 dence which even tended to establish a mistake in the contract. What may be shown on a subsequent trial it is impossible for us to imagine, but as the case now stands the verdict is entirely unsupported on this proposition.
We now come to the statement of the facts which bear on another legal proposition which has been strongly pressed on our attention. We shall only discuss one branch of it and shall entirely ignore the point that we are urged to decide that under the peculiar phraseology of this contract there could be no waiver of a condition unless the waiver was indorsed in writing on the policy. This branch of the inquiry has been one of much controversy among the courts, and as counsel suggests has never been decided in the state, and we are disinclined to express our opinion about it because our judgment can be very safely rested on the other basis, and we prefer to wait the possible settlement of it by the court whose conclusion would establish the law of the state. As has already been stated the policy covered property in the Smith hotel. It was to be transferred to the Arlington. About this there is no question, and it is equally clear the agents were informed of the intention of the assured to .transfer it, were requested to change the policy to cover the property in the new locality, and that there was some understanding between the agent and Mr. Smith respecting it. It is a little difficult to state exactly what we conclude from the testimony without possibly going too far in the expression of our opinion, and thereby unduly influencing the jurj' on the subsequent trial. We shall avoid it as much as possible simply stating that in the case as it now stands the evidence shows what we here state. It is conceded that application was made to the agents for the purposes of a transfer. It is equally true the agents consented to the transfer, and agreed to change the policy to cover the property in the new locality. The only dispute, if there be any, is respecting the terms and conditions under which the transfer was to be made. The assured attempts to bring the case within those decisions which hold that where the agent *126 agrees to do a thing and the assured relies upon the promise to his detriment, the company shall not afterwards be permitted to contend the condition or the limitation was not expressed as provided for by the policy, to wit, by an indorsement in writing. This case does not come within either the restricted or the most liberal decisions on this subject. What the evidence shows is that when Smith went to the agents, Atkinson and Reeves, to make the transfer they said they were willing to consent to it, and would make the indorsement on the policy if he would produce it for the purpose. There was no consent at any time expressed by the agents to a transfer without the indorsement, nor did they agree that the property might be transferred and the consent thereafter indorsed. Smith was told to bring the policy to the office and they would make the indorsement consenting to the transfer. This Smith failed to do. Subsequently one of the agents, Atkinson, went to get the policy in order to do that which the insured desired, to wit, indorse the consent. Smith himself'testifies that on the 28th of March, at the time of the conversation relied upon to show the mistake, Atkinson came up to get the policy for the purpose as Atkinson said of making the indorsement. Smith did not give it to him for the reason as he himself testified that he was busy, did not know just where it was, and asked him to call again. He did not recollect that Atkinson called the second time, although Atkinson himself directly testified that he went there twice for the purpose. It is thus very evident even on the plaintiff’s own case that there was no agreement or promise by the agents to consent to the transfer except by the indorsement for which the policy itself provided. When it comes to the defendant’s testimony, both the agents testified that the only suggestion was that on the production of the policy they would indorse on it whatever he wanted with respect to a change of location. It is thus and thereby made evident, the assured was not misled to his prejudice, and there is no room for the application of the doctrine of a waiver of a condition of the policy resulting from the declara *127 tions and acts of the agent, and nothing to show that the assured was misled to Ms prejudice. This is the' basis of nearly all of the decisions wMch hold that conditions may be waived although there is an express limitation m the policy on the right of the agent to waive them without a written Mdorsement. We are therefore not called on to decide as to the scope or effect of that provision of the policy wMch forbids the waiver of any conditions by an agent without an indorsement in writing because there never was any agreement by the agent to waive the condition except in the form provided for M the policy of which the assured was advised, and the agents did nothing and said nothing upon which the assured had any right to rely and which would constitute a waiver of the performance of that requirement of the policy in the form specified by its terms.
TMs statement and this discussion illustrates very clearly the difficulty Avith the case. According to the instructions Avhich the court gave, many questions were left to the jury Avlfich were not properly involved, and the court refused sundry and divers instructions asked by the defendant which it ought to have given in order to enable the jury to pass correctly upon the issues. It does not seem important to recite those instructions which are numerous and elaborate since the points to which they refer, and to which we have already adverted, will be clear from a very simple statement. The jury were undoubtedly told that the attention of the defendant was called to the error as to the person with whom the company contracted, and that it was claimed the agents agreed to make a correction in the policy so as to protect Mrs. Smith against loss by fire. The jury Avere left to determine whether the defendant company did agree to make such correction and assignment as she claimed, and the court stated that if the jury should find such to be the fact, she was entitled to recover as though the policy had been originally in her name. This was undoubtedly error because under the testimony there was no such question in the case at all.
There was nothing Avhatever to show that the company *128 had. agreed, to issue a policy to Mrs. Smith and hardly any evidencé that there was a mistake in issuing it to her husband, and the case was barren of proof which warranted, the submission to the jury of the question whether the company had agreed to change the policy in its terms to run to Mrs. Smith in place of her husband, and to see that it was assigned to her and covered her interest in the property. The duty of the plaintiff in respect to the proof which must be offered if a contract is to be corrected and made to run to one who is not a party to it by its terms is tolerably well settled. The policy will not be reformed on the ground of a mistake of fact unless the proof is clear, convincing, and satisfactory, and it must be free from any reasonable controversy. The burden of establishing the facts respecting it is upon the plaintiff, and if the plaintiff fails at all in any of these particulars, he does not become entitled to have the policy reformed and enforced as thus altered. Home Fire Ins. Co. v. Wood, 69 N. W. Rep. 941; Trustees St. Clara Female Academy v. Delaware Ins. Co., 66 N. W. Rep. 1140.
This case is barren of proof to bring it within the scope of these well settled rules. Smith testified that the property was his wife’s, and he supposed the agent knew it, although he never advised him about it, and his supposition is based on the fact that according to his testimony a policy was issued to her on property in the Smith hotel, and that this policy which ran to him was in renewal either of another which ran to him, or of one which ran to his wife, and if the first, it was a renewal of one which ran to his wife on property in that house. This does not show that there was any mistake in making out this policy to him in place of to her. There might have been a change of ownership; it might have covered other property; nothing was said to the agents about it, and they testified they had no knowledge respecting its ownership. The plaintiff failed to produce the policies to show that they ran to her and not to him, were the same in form and in renewal of the same policy, and we are surprised that she was permitted to give any testimony respecting the *129 terms of those instruments without producing the policies themselves. But far beyond all this when we resort to Smith’s own testimony we find that he first discovered the mistake in the policy after the fire. It is true Mr. Smith states that Upton was employed by his wife to see to the transfer and fixing up of these various policies in the Arlington, and says that he thought from what was said it was understood the policy was to he changed to Mrs. Smith and therefore run to her and not to him, but Upton himself testified that he was not the agent of Mrs. Smith at all, did not represent her in any way, and was only there for the purpose of fixing up the policies in the companies which he represented. Smith testified that he never considered it of any consequence until he was getting ready for this suit. He says that prior to the loss it did not occur to him that it made any difference whether there was a change in the name of the person insured or it was permitted to stand. The agents directly testified that they were without knowledge on the subject and never understood him to make any application for a change in the name of the assured or any other alteration save as to the locality of the property. Under these circumstances this is not the clear, satisfactory, and convincing proof which the cases require, and the court erred in submitting that question to the jury. Unless this question was an open one which the jury might determine, it is very manifest the plaintiff could not recover, but a verdict should have been directed for the defendant because the suit was brought in the name of a person with whom the company did not contract, to whom they were not liable, who had no right to enforce the agreement, and who by proof had shown that the property belonged to her and therefore was not covered by the policy.
The court did not correctly advise the jury with respect to the question of waiver. The defendant asked numerous instructions on the subject which suggested the true rule respecting it although perhaps they were not entirely accurate in the form in which they were put, but they were sufficiently so to save the question. Under the evidence there was no *130 question respecting the liability of the company because of any waiver of conditions by the agent which were not indorsed upon the policy, and the sole question to be submitted to the jury was whether the agents agreed to make the proper indorsements on the policy with reference to the change of locality where the property was to be kept, and whether the failure to make that indorsement resulted from the neglect of the plaintiff to produce the policy, or the neglect of the agents to get it under any agreement between them and the assured by which the company would be bound. So far as we can see as the ease now stands, the agents made no agreement to consent to a transfer of the property from the Smith hotel to the Arlington except on a performance of the condition of the policy, to wit, by an indorsement thereon. If such was their agreement and the jury should so find then the failure to show such an indorsement would undoubtedly bar the plaintiff’s recovery because there was no waiver of •the condition which the policy contained. It is undoubtedly the rule that where the agent makes an agreement to change the terms and conditions of the policy, but only in conformity to its requirements, the company could not be bound by any other waiver of the condition. The authorities all seem to agree that unless there is a waiver proven, or facts proven from which a waiver could be inferred otherwise than in accordance with the conditions of the policy, it will not be binding on the company. Where the agreement which the agent makes is simply to do that which the assured requests, and to do it only in the way which the policy requires, the company may not be bound without proof of a compliance with this condition because the agent restricts his consent to a performance in conformity with its limitations. As the case now stands such is the record. The agents both testified that they only agreed to a change of the property from the Smith hotel to the'Arlington by indorsing the consent on the policy. As they put it, “ whatever you want we will assent to, if you will bring the policy down here and permit us to put it on.” This is totally undenied. The defend *131 ant’s own testimony tended in the same direction. Therefore, it was improper to leave the question to the jury as to whether there could he a parol waiver of a condition which the company required should he written on the policy because there was nothing in the case to justify any such statement of the law. What the case may show on the subsequent trial we cannot foresee, but unless there be some very grave change in the evidence in this particular, it is manifest that upon this point as well as upon the other, the plaintiff must be defeated.
The plaintiff was not entitled to recover upon the case as she made it, the court erred in some of its instructions to the jury, and in refusing others which the defendant asked upon the propositions which have been determined, and for the errors committed in these particulars the cause will be reversed and remanded.

Reversed.