THE GERMAN INSURANCE COMPANY, OF FREEPORT, ILL., v. THE EMPORIA MUTUAL LOAN AND SAVINGS ASSOCIATION.

**No. 360.**   (59 Pac. 1092.)

1. CONTRACTS— *Agency — Ratification — Failure to Repudiate.* A person may become bound by a contract which another, without authority, has assumed to make in his name, by knowingly accepting its benefits or by failing to repudiate it after he has full knowledge of all the facts.

2. FIRE INSURANCE— *Additional Insurance—Acceptance of Benefits.* In the absence and without the knowledge of H., the plaintiff's assignor, his wife procured additional insurance on the property covered by the policy sued upon herein, which contained a provision rendering it void if additional insurance should be procured without the insurer's consent indorsed thereon, and after loss of the insured property by fire H. received the benefits of the additional insurance. *Held,* that acceptance of the benefits of the unauthorized act was a ratification thereof, relating back to its date and binding H. and assignee to the same extent as if he had himself procured the additional insurance.

3. ——— *Forfeiture — Collection of Premium.* Where a policy of fire insurance is forfeited by the acts of the insured after part of the premium has been earned the entire premium is treated as earned, and its subsequent collection by the insurer is not a waiver of such forfeiture.

Error from Harvey district court; MATTHEW P. SIMPSON, judge.   Opinion filed February 14, 1900. Reversed.

*A. L. Green,* and *Barnett & Barnett,* for plaintiff in error.

*E. W. Cunningham,* for defendant in error.

The opinion of the court was delivered by

MILTON, J.: This action was brought in the district court of Reno county upon a policy of insurance for $1000, issued on February 11, 1896, by the plaintiff in error to one Christian Hess, covering his dwelling-

house in Halstead, Kan.    On the 24th of April in the same year the property was destroyed by fire, and shortly after this Hess assigned the policy to the defendant in error, plaintiff below, in whose favor judgment was thereafter rendered for the face of the policy with interest.

The only defense to the action urged in this court is that the policy was made void by the act of Hess in procuring, on April 4, 1896, without the consent of the defendant below, additional insurance on the property in the Phenix Insurance Company, of Brooklyn.    The policy sued upon and that issued by the Phenix Insurance Company each provided, in substance, that if the assured should, without the written permission of the insurer indorsed on the policy, then have or thereafter make or procure any other contract of insurance, whether valid or not, covering the same property, the policy should be void.    The insurance written by the Phenix company was procured by the wife of Christian Hess, without his knowledge or consent, during his absence in Oklahoma, and he did not learn of the transaction until after the loss by fire had occurred.    Thereafter he assigned both policies to defendant in error, which effected a compromise of the claim against the Phenix company, the latter paying the sum of $350, for which the defendant in error gave Hess credit, he being indebted to it in a much larger sum.    In his proofs of loss Hess stated the foregoing facts concerning the additional insurance.    It is contended by the plaintiff in error that, in receiving the benefits of the insurance procured by his wife, Hess adopted and ratified her act in the premises, with the result that the policy sued upon was rendered void.    The contention is sound, and is supported by the following cases: *McElvy v.*

*Insurance Co., Appellant*, 161 Pa. St. 279, 28 Atl. 1115;
*DeFoe v. Johnston Insurance Co.*, 7 Upper Canada Com.
Pleas Rep. 55; *Hughes v. Ins. Co. of North America*, 40
Neb. 626, 59 N. W. 112.   These cases are based upon
the principle which is thus declared by the supreme
court of Iowa in the case of *Eikenberry & Co. v. Ed-
wards*, 67 Iowa, 14, 24 N. W. 573:

"One may become bound by a contract which an-
other, without authority, has assumed to make in his
name, by knowingly accepting its benefits, or by fail-
ing to repudiate it within a reasonable time after he
is fully informed of the act."

In *McKelvy v. Insurance Co.*, supra, the additional
insurance was taken out by the wife of the assured
without his knowledge or consent and he did not learn
of it until after the loss.   He failed clearly to disclose
the fact of the additional insurance when making his
first proof of loss but did so in the second proof, some
five months after the fire, and then repudiated the
later insurance.   The court held that the insured, on
learning of the second insurance, should have promptly
repudiated it, and having failed so to do, he had rati-
fied the same and it constituted other insurance,
avoiding the policy sued upon.   In *DeFoe v. Johnston
Insurance Co.*, supra, the assured collected money upon
the second policy, which, without his knowledge or
consent, had been procured by his father.   Referring
to the proper course of the assured upon discovery of
the additional insurance, the court said:

"His course in such a case would be clear.   Im-
mediately on discovering it he could repudiate the act
and decline any benefit under it.   In the case before
us the plaintiff chose to at once ratify and adopt the
assurance made, as is alleged, by his father in his
name.   He received large sums of money under it.
.  .  .   The act of the agent is assumed as the act of

the principal from the beginning. It is considered as wholly done with his assent, and as he is willing to receive the benefit, he must take all the legal consequences.''

In the case of *Hughes v. Ins. Co. of North America,* supra, to overcome the defense that the policy sued upon was avoided by additional insurance taken out in violation of its provisions, it was shown that one Hynes, who was the agent of Hughes for the purpose of renting and looking after the insured property, and who had no authority to procure insurance thereon, had taken out the additional insurance without the knowledge of his principal, who did not learn of such fact until after the loss occurred. Shortly after the fire Hughes made a settlement with the company from which Hynes had procured the policy, receiving a considerable sum in satisfaction of his claim under the policy. The court said :

'' Here, then, was a ratification by Hughes of the act of Hynes in procuring this additional policy of insurance ; and this ratification related back to the date of the issuing of the 'policy, and Hughes became bound by the effects thereof, and by the results flowing therefrom, as much as if he had himself procured the policy of insurance. The acceptance by a principal of the fruits of an unauthorized contract made by his agent, with full knowledge of all the facts, is a ratification of such agent's contract.''

It was contended by counsel for Hughes that the second policy, which was written by the Phœnix Insurance Company, never was in force as valid insurance, because in violation of the terms of the second policy itself, and that by the provisions of the policy in suit.he was prohibited from procuring other valid insurance only. The court held that the provision in question did not render the policy void, but made it

voidable at the election of the Phœnix company ; and also pointed out the fact that Hughes had promised that he would not procure any additional insurance on the property without the consent of the litigant company, and that having violated such agreement, and after such violation was pleaded as a defense to his action upon the policy, he then pleaded in avoidance of such defense that although he attempted to violate that agreement he did not succeed because the contract he made for additional insurance was not valid. Upon this point the court said :

"The courts decline to adopt any such jugglery. To permit Hughes to say that the Phœnix Insurance Company's policy never had any validity is to permit him to take advantage of his own wrong.   The courts will interpret and enforce the contracts as made and understood by them, when such contracts were entered into upon a valuable consideration and without fraud or mistake."

The following cases hold that a provision like the one in question concerning additional insurance, "whether valid or not," renders the policy voidable at the option of the insurer : *Sugg v. Insurance Co.*, 98 N. C. 143, 3 S. E. 752 ; *The Phenix Insurance Co. v. Lamar*, 106 Ind. 513, 7 N. E. 241 ; *Funke v. Minnesota Farmers' Mut. Fire Ins. Ass'n*, 29 Minn. 347, 13 N. W. 164 ; *Home Fire Ins. Co. v. Wood*, 50 Neb. 381, 69 N. W. 941 ; *Keyser v. Insurance Co.*, 66 Mich. 664, 33 N. W. 756 ; *Zinck v. Phœnix Ins. Co.*, 60 Iowa, 266, 14 N. W. 792.

The only decision cited by the defendant in error in opposition to the foregoing decisions is *Dwelling House Ins. Co. v. Garner*, 56 Ill. App. 199, wherein it was held that knowledge obtained after the loss, even where it was enforced by a successful attempt to enforce the other insurance, is no breach of the condition ; for the object of the prohibition (against other

insurance without consent of the first insurer) is to prevent the moral hazard arising from the knowledge on the part of the insured that his property is excessively insured; and when this knowledge is not obtained until after the loss, there is no increase of hazard.

The objection to the doctrine just stated is that it disregards the contract between the insurer and the insured, as was pointed out by the court in *Hughes v. Ins. Co. of North America,* supra: "Provisions in policies of insurance providing that the policies shall be void if other insurance be taken out without the consent of the insurer are valid. (2 May, Ins. § 364.) And subsequent insurance, taken out without the consent of the insurer, either expressed or implied, avoids the policy." (*Assurance Co. v. Norwood,* 57 Kan. 615, 47 Pac. 529.)

There is another question to be considered. When the policy sued upon was issued, Hess gave his promissory note for the premium thereon and the note matured after the loss occurred and before this action was commenced. In its answer the company set up this note "by way of counter-claim," demanding judgment thereon, and the journal entry of judgment shows that the court found due the plaintiff from the defendant the sum of $1028.30, "after the deduction of the amount due on the note mentioned in the policy of insurance sued upon and given by C. Hess, which deduction is voluntarily made by the plaintiff." The policy provided as follows: "In case of loss prior to the maturity of any note given as consideration, the company may deduct said note in settlement." The defendant in error contends that by thus pleading the insurance company waived the defense that its policy was avoided by the additional insurance. This conten-

Insurance Co. v. Savings Association.

tion cannot be sustained.   Part of the premium was already earned before the additional insurance which caused a forfeiture of the first policy was written.   As a result of the forfeiture the entire premium is treated as earned, and the collection thereof does not constitute a waiver of such forfeiture.   (*Schimp v. Cedar Rapids Ins. Co.*, 124 Ill. 354, 16 N. E. 229 ; 1 Wood, Fire Ins., 2d ed., § 109.)

Where the premium had been paid in cash, it was held that the assured could not, after forfeiture by reason of additional insurance contrary to the terms of the policy, recover any part of such premium under a clause of the policy providing for the return of unearned premiums upon cancelation of the policy. (*Colby v. The Cedar Rapids Ins. Co.*, 66 Iowa, 577, 24 N. W. 54.)

In this view the premium represented by the note of Christian Hess was earned, and the right of action on the note was complete when the answer herein was filed ; but that right of action was not against the plaintiff below, it was against Hess, who is not a party in this case.   The " counter-claim " therefore had no proper place in the pleadings and no relevancy to the real issues before the trial court.   The motion to dismiss the proceedings in error is overruled.

The judgment of the district court will be reversed and the cause remanded for a new trial.