HEWS v. EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES.

(Circuit Court of Appeals, Third Circuit. February 6, 1906.)

No. 52.

1. INSURANCE—EVIDENCE—HEARSAY—ADMISSIONS OF INSURED.

Where a policy payable to insured's wife was alleged to have been procured by fraudulent misstatements with reference to his health and habits, insured's previous admissions concerning his diseased condition and habits of intemperance were not objectionable as hearsay as against such beneficiary, as she could occupy no better position than the insured.

2. SAME—RELEVANCY—ACTION ON POLICY—EVIDENCE.

Where insured, in his application for a policy issued in November, 1903, stated that he had "never" had any serious illness, nor been intemperate, evidence of declarations made by him, the earliest of which was in 1896, that he then had diabetes, with which disease he continued to suffer up to the time of the application, and disclosing habits of intemperance, were not objectionable for remoteness.

3. SAME—APPLICATION.

Where the answers made by insured to insurer's medical examiner were not referred to in the policy, nor made a part of the application, such answers were not within Pennsylvania Act May 11, 1881 (P. L. 20), requiring policies containing any reference to the application of the insured, etc., to contain a correct copy thereof, and declaring that unless so attached such application, etc., should not be received in evidence, nor be considered as a part of the policy.

4. SAME—FRAUDS.

Pennsylvania Act May 11, 1881 (P. L. 20), declaring that where the application of insured, or the constitution and by-laws, or other rules of insurer, shall form a part of a policy, copies thereof not attached to the policy shall not be received in evidence in any controversy between the parties to or interested in the policy, etc., has no application to a policy which was void for fraud of the insured in its inception.

5. SAME—TRIAL—DIRECTION OF VERDICT.

Where, in an action on a policy, the only inference which could reasonably have been deduced from the evidence was that insured had made material misrepresentations as to his physical condition and as to his use of alcoholic beverages, both in his application and in his answers to insurer's medical examiner, and his misstatements were known by him to be false and were made with intent that insurer should believe and act on them, it was proper for the court to direct a verdict for defendant.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

D. M. Hertzog, for plaintiff in error.

Willis F. McCook, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This writ of error has brought up the record in an action which was instituted by the plaintiff in error against the defendant in error, upon a policy dated November 9, 1903, insuring the life of Samuel R. Hews, who was the plaintiff's husband. The defenses were that the policy had been fraudulently procured, and that the application contained statements which were warranted

to be true, but which in fact were untrue. The verdict was for the defendant, and it was amply justified by the evidence. We, however, are not concerned with the action of the jury, but with that of the court, and the errors averred to have been committed by it are said in the plaintiff's brief to present the following questions:

"First. Was it proper to admit in evidence statements concerning the condition of the health of the insured made by him to a physician while being treated a long time prior to his application for the policy, and also like statements made to another person, not a physician, several years prior to the application?

"Second. Did the paper signed by the insured containing the questions of the defendant company's examining physician and the answers of the insured thereto preliminary to the issuing of the policy form part of the 'Application for Insurance'? If so, was it error to admit that paper in evidence; no copy thereof having been attached to the policy?

"Third. Is it material to the issue to determine whether or not there was a fraudulent intention on the part of the insured in answering the questions set forth in his application? If so, is the finding of such intent a question for the court or for the jury?"

1. Dr. Taylor, a witness called for the defendant, was a resident physician of the "Keeley Institute," in the city of Pittsburgh. He testified that he had there treated Samuel R. Hews for alcoholism in April and May, 1903, and again in September of the same year. He produced two sets of papers, one of which related to the first and the other to the second of these occasions; and each of them, he said, was "a record taken at the time that is kept on file." The defendant first offered these papers as a whole; but, upon objection made, it limited the offer to such part of them as had been signed by S. R. Hews, and that part the court admitted. Jacob Morgan, called for the defendant, was, against the plaintiff's objection, permitted to testify that S. R. Hews had told him in 1896 that he then had diabetes. To the testimony of these two witnesses, and to the statements signed by Hews and produced by Dr. Taylor, the first of the questions which we have quoted from the plaintiff's brief appears, from what there follows, to refer; and the grounds which have been mainly relied on to support the contention that evidence, either oral or documentary, of the declarations of Hews respecting the state of his health and his habits as to temperance, should not have been admitted, are that they were made at a time too remote from the time of the application to be material, and that, because the policy was "in favor of another," evidence of any declaration made by the insured should have been excluded as hearsay. These are the only points which, upon this branch of the case, seem to us to be serious enough to call for discussion, and to them we now direct our attention.

The policy was issued to Samuel R. Hews, and though it was made payable to his wife, if living at his death, subject to his right to change the beneficiary, still the contract was with him, and if he secured it by fraud, it was void, and not enforceable either by him or by her. The fraud alleged was that, both in his application and in his answers to the company's medical examiner, Hews had made material statements of fact which were false, and which he knew to be so. In the former he said, "Nor have I been intemperate, or had any serious ill-

ness or disease, except diseases incident to childhood," and in the latter, that he had never been affected with "any serious disease, injury, or infirmity," and that his practice as regards the use of alcoholic beverages was "an occasional glass of beer," and that he never had been a "free-drinker," and had never taken "treatment for alcoholic or narcotic habit." Upon the question whether these statements were consciously untruthful, the previous admissions by Hews of his diseased condition and habits of intemperance were manifestly pertinent and important; and the contention that evidence thereof, as against the beneficiary under the policy, was hearsay, is fallacious. Under such a policy the beneficiary occupies no better or stronger position than the person from whom the asserted right to benefit by it is derived, and the legal relation between them is such that the former is legitimately affected by the antecedent relevant declarations of the latter. In this case the plaintiff was liable to an inquiry into the previous life and condition of Mr. Hews, and all facts were provable which tended to show what they had been. The policy sued on was procured by him and upon his representations. Therefore she was bound by those representations, and was subject to the consequence of his knowledge of their falsity; and his declarations were evidential against her, because, upon the issue as to whether he had fraudulently procured the policy (upon which depended its legal existence), any evidence was admissible that would have been competent if that issue had arisen in a suit to which he, instead of his appointee, had been a party.

We do not think that any one of the facts in question was so remote from the time of the application as to require that evidence of it should be excluded. The earliest time referred to was the year 1896, when, as testified by Mr. Morgan, Samuel R. Hews said that he then had diabetes, but there was other evidence tending to show that he continued to have that disease up to the time of the application; and it is to be borne in mind, too, that the representations made by Hews were that he never had any serious illness, or had been intemperate. Rulings of the trial judge upon questions of remoteness will not be disturbed by an appellate court in any case, unless an abuse of discretion quite clearly appears; and in this one the discretion of the learned judge of the court below was in our opinion correctly, as well as rightfully, exercised. Nicola Bros. Co. v. Speer Box & Lumber Co., 133 Fed. 914, 67 C. C. A. 208.

2. The Pennsylvania statute of May 11, 1881 (P. L. 20), provides:

"That all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein, which contain any reference to the application of the insured or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to; and, unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, or shall such application or by-laws be considered a part of the policy or contract between such parties."

The answers which were made by Hews to the company's medical examiner were not within this provision. "This policy, and the application therefor, taken together, constitute the entire contract," and the answers in question were neither referred to in the former, nor made part of the latter. They, of course, formed no part of the "constitution, by-laws or other rules of the company," nor of its charter, which latter, it has been held, might, under circumstances not present in this case, be taken to be within the spirit of the act. Muhlenberg v. Insurance Co., 211 Pa. 432, 60 Atl. 995. Moreover, fraud in its procurement "strikes at the obligation of the policy itself. It is not to be regarded as touching the construction of the paper, but as to the subsistence of, the policy as an instrument binding the company"; and therefore to such a case as is now under consideration the statute is wholly inapplicable. Carrigan v. Massachusetts Benefit Ass'n (C. C.) 26 Fed. 230.

3. That the intent with which a representation was made is relevant to a question as to whether a fraud was committed in making it is unquestionably true; and it may be conceded that ordinarily, in an action upon a policy, it is for the jury to determine whether statements material to the risk and untrue in fact were made by the applicant with knowledge of their untruthfulness and with the fraudulent design of thereby inducing the issuance of the policy. But we cannot agree that the learned judge, by taking that question from the jury in this case, committed reversible error. Careful examination of the evidence has entirely satisfied us that the only inference which could reasonably have been deduced from it is that material representations as to his physical condition and as to his use of alcoholic beverages were made by Hews, both in his application and in his answers to the medical examiner, which were absolutely false, and which he knew to be so, and made with intent that the company should believe and act upon them. This being so, there was nothing upon which a finding that the misrepresentations in question had been "made in good faith" could have been sustained, and therefore the defendant was entitled to the binding instruction which, in effect, was given upon this subject; for "it is the settled law of this court that when the evidence given at the trial, with all the inferences which the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014. The question is whether from the evidence an inference favorable to the plaintiff could rationally have been drawn, and, as we have already said, we are clearly of opinion that it could not have been. Hart v. United States, 84 Fed. 799, 28 C. C. A. 612.

The judgment of the Circuit Court is affirmed.