FLORA E. AABERG, AS ADMINISTRATOR, ETC. v. MINNE-
SOTA COMMERCIAL MEN'S ASSOCIATION.[1]

January 9, 1925.

No. 24,209.

**Plaintiff was real party in interest.**
1. No competent evidence showed plaintiff not to be a real party
in interest, nor did the court err in refusing defendant, in the third
trial of the case, leave to amend the answer so as to allege that she
was not such a party.

**Benefits not forfeited by physician's failure to send reports.**
2. The failure of the attending physician to send reports every
30 days to defendant, such reports not being requested, did not forfeit
the benefits that had accrued under the accident insurance issued by
defendant.

**Refusal to charge jury on excessive use of liquor correct.**
3. The proof did not justify a finding that the insured used malt
or spirituous liquors in excess when he applied for insurance, hence
it was not error to refuse to charge the jury that the verdict should
be for defendant if they found that he then used them in excess.

**Person insured has reasonable time in which to give written notice.**
4. The court did not err in instructing the jury that an insured
should have reasonable opportunity within which to give written
notice of additional insurance provided for in part 17 of section 3525,
G. S. 1913, before the prior insurer may pro rate a loss.

The third trial of the case was before Leary, J., and a jury which
returned a verdict for $1,989.31. From an order denying its alter-
native motion for a reduction of the verdict to 1/5 of the amount
thereof or to ½ of the amount thereof, or for judgment notwithstand-
ing the verdict or for a new trial, defendant appealed. Affirmed.

A. V. Rieke and Lancaster, Simpson, Junell & Dorsey and Robert
Driscoll, for appellant.

Odell & Fahey, for respondent.

[1]Reported in 201 N. W. 626.

HOLT, J.

This is the third appearance of the case here. The former opinions are found in 143 Minn. 354, 173 N. W. 708 and 152 Minn. 478, 189 N. W. 434, reference to which will give the facts in more detail than deemed necessary for a decision on the present appeal.

The action is to recover upon an accident insurance policy issued by defendant to Albert Aaberg, now deceased. His widow, as administratrix of his estate, has been substituted as plaintiff. This policy was issued February 1, 1915, upon Aaberg's written application made two days before. He met with an accident on April 15, 1915, from which he suffered a total disability for 54 weeks. There was a verdict for the full amount of the loss for that period. The appeal is from the order denying judgment non obstante, refusing to reduce the verdict, or grant a new trial.

With commendable skill counsel for appellant have grouped the many errors assigned under four heads. Two of these are technical, and, as we view them, of little merit and will be disposed of briefly.

1. It is contended that defendant should have judgment because plaintiff is not the real party in interest, her cause of action having been assigned. It is enough to say that evidence of an assignment was improperly admitted. Such defense was not pleaded. The terms and conditions of the assignment were not proven. It does not appear that plaintiff parted with all interest in the subject of the action, and, even if so, she might continue the action for the benefit of the assignee. Dunnell, Minn. Dig. § 7330. The court did not abuse judicial discretion in refusing defendant leave to amend by alleging that plaintiff was not the real party in interest.

2. The by-laws, a part of the contract, required the insured to give written notice of the injury to the secretary of defendant within 20 days after the accident. This notice was duly given. It further provides that no claim for indemnity shall be valid unless the member "shall at any time during the continuance of disability within ten days of the request of the secretary furnish such further proofs and statements in such form as may be required by the association, and shall furnish or cause to be furnished to the secre-

tary of the association a full report by the attending physician of his condition once in every thirty days and keep the home office informed of his address and whereabouts; and unless such member, his beneficiary or representative, shall, within thirty days from the termination of disability, furnish the association with such affirmative and final proof of disability in writing, duly verified, as may be required by the association. Failure to furnish such notice, proofs and statements shall cause a forfeiture of all rights to benefits" etc. No further proofs or statements were demanded during the continuance of disability, nor were full reports by the attending physician furnished every 30 days or at all, except just after the accident and when the disability ceased. Aaberg was furnished with blanks by defendant for final proofs, and these were properly made out, verified and presented to defendant. Appellant contends the provisions quoted should be construed to mean a forfeiture of benefits unless, during the continuance of the disability, the attending physician's report be furnished every 30 days; whereas respondent claims that such reports are only to be furnished if requested by the association, but that they cannot be requested oftener than every 30 days, while other proofs and statements from the assured may be demanded as often as desired and must be furnished within ten days after demand.

The by-law is ambiguous and should be construed so as not needlessly to burden the assured and risk forfeiture of the benefits which may have accrued under the contract of insurance. In the last sentence quoted the causes of forfeiture do not include failure to furnish "reports" of attending physician. Moreover, the testimony of defendant's secretary indicates a practical construction of the provision in question conforming to respondent's contention. The record discloses also that final proofs of the disability were received and accepted without objection that any preceding reports from the attending physician were lacking; and denial of liability was never placed on that ground until counsel moved for a directed verdict. We do not think the by-law should be so construed that a forfeiture of benefits results, if between the first and last reports from the attending physician there are not furnished also intermediate reports every 30 days, unless the insurer requests the same.

Aaberg's application for insurance contained these questions and answers: "No. 41. Are your habits correct and temperate? Yes. * * * No. 43. Do you use either malt or spirituous liquors in excess? No." It is claimed the evidence conclusively established the falsity of the answers and that being so, as a matter of law, it materially affected the acceptance of the risk and the hazard assumed by the insurer. Question No. 41 ought not to be construed as referring to the use of intoxicants for question No. 43 is specifically directed to that subject. The only evidence adduced by defendant to prove the falsity of the answer to question No. 43 is the testimony of Mr. Murray, the owner of the Murray Institute, an institution for the cure of the liquor habit. He testified that he had administered the cure to Aaberg three times, once about ten months before the application to defendant was made, once in November, 1914, and once in March, 1915. Aaberg denied that the last two visits were to take a cure; but, if we accept the testimony of Mr. Murray at its face value, it shows that he was well acquainted with Mr. Aaberg, met him at other places than his institute, yet there is not a word that he ever saw him under the influence of liquor except at the three times he came to the institute, as he says, for treatment. He also testified that 10 to 20 days is required for a cure; that a patient once received is not discharged before a cure is effected. The most then that can be made from this evidence is that a cure is not always permanent. Granted that the first cure was not lasting, still when he was discharged in November both Murray and Aaberg no doubt considered a cure had been accomplished. There is absolutely no evidence warranting a finding that between November and January 30 following, when he applied for insurance with defendant, Aaberg used either malt or spirituous liquors to excess, or at all. If he did use liquors to excess when the application was made, direct proof might have been readily accessible. We therefore think the refusal of the court to instruct that if the jury found that Aaberg at "the time when he applied for his membership in defendant association, used malt or spirituous liquor in excess" they should return a verdict for defendant, was not reversible error.

It may be granted that, as a matter of law, a false answer to the inquiry concerning excessive use of intoxicating liquor materially affects the acceptance of the risk and the hazard assumed by the insurer. Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474. But, although the falsity of the representation was in the instant case submitted to the jury, we think there was no proof to sustain a finding that it was false, taking into consideration the narrow scope of the inquiry which related to the excessive use of either malt or spirituous liquors at the time of application, and no information was sought as to use in time past, either excessive or otherwise. Hews v. Equitable Life Assur. Soc. 143 F. 850, 74 C. C. A. 676, is cited by appellant as on all fours with the case at bar and decisive in its favor. The difference in the representations is apparent. There the applicant represented "nor have I been intemperate" and that his practice as to the use of alcoholic beverages was "an occasional glass of beer," and that he had never been a "free drinker," and "had never taken treatment for alcoholic or narcotic habit." The proof showed this last representation was knowingly false, he having been treated for alcoholism in a Keeley Institute at three different times within a few months of the application. Had the representation in the instant case been that Aaberg had never taken any treatment for the alcoholic habit, there would have been a similarity. The minute inquiries as to the use of intoxicants answered in the case of O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454, 25 L. R. A. (N. S.) 1244, also distinguishes it from the present case.

The troublesome question is the construction of this part of section 3525, G. S. 1913, reading:

"17. If the insured shall carry with another company, corporation, association, or society other insurance covering the same loss without giving written notice to the insurer, then and in that case the insurer shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

Under the decision in the first appeal (143 Minn. 354, 173 N. W. 708), this statute must be substituted for the promise in the application to give notice of additional insurance and the agreed consequence of a failure to do so. It appears that, subsequent to his application for insurance with defendant, Aaberg applied for like insurance in two other companies. As to one, written notice was duly received prior to the accident, but, as to the other, notice that the insurance had been effected, did not reach Aaberg until after the accident although the policy was issued some days before. He therefore had no opportunity of giving notice until after the injury. Defendant claims the statute should be construed as automatically prorating the insurance the moment additional insurance is effected, and thus remaining until written notice thereof is received by the first insurer. Plaintiff, on the other hand, would construe the law to mean that the insured should have a reasonable opportunity to inform the first insurer of the additional insurance before the latter operates to reduce the benefits named in the first. The statute does not frown upon additional accident insurance, but gives the insurer an option to insert in the contract or policy the provision quoted. That provision penalizes the insured only when he carries such additional insurance without giving written notice to the insurer. He cannot well give such notice until he has knowledge that additional insurance has been obtained. The statute is ambiguous in that it does not define when the written notice is effective, whether when sent by the insured or when received by the insurer, or what the latter may do if it does not consent to such additional insurance, or within what time advantages may be taken thereof. We therefore conclude the trial court was right in instructing the jury that the insured had a reasonable time within which to give the written notice, and that, until such reasonable time had expired, defendant had no right to take advantage of the pro rata provision of the statute.

Defendant relies on Dustin v. Interstate Business Men's Acc. Assn. 37 S. D. 635, 159 N. W. 395, L. R. A. 1917B, 319, where the condition of the policy was: "If the member shall carry any other accident insurance, of which he has not notified this asso-

ciation in writing at least fifteen days prior to the date of any accident on account of which any claim is made hereunder," etc. there shall be pro rata insurance.   An accident resulting in the death of the insured took place six days after the additional insurance was effected, and hence it was impossible to avoid the condition of the policy which automatically prorated the original insurance with the additional the moment the latter was obtained.   Under our statute the failure to give written notice of the additional insurance bears on the amount of the liability of the first insurer.   And it seems to us written notice should not be required before the insurer has knowledge that additional insurance is issued.   The claim is made, of course, that the optional provision, which section 3525 permits the insurer to insert, is to guard against the moral hazard of over insurance.   It is quite apparent, in the instant case, that it was not availed of for such purpose, but rather to escape the full protection agreed to be given the insured, for, after the accident, with full knowledge that Aaberg carried the additional insurance here in question, and in two other companies, defendant retained him as a risk and accepted premiums from him.   (Exhibits F and C, not printed in the record).   Other authorities cited in support of defendant's construction of the statute as to the effect of failure to give notice of additional insurance do not seem in point.   In Inland Ins. & Deposit Co. v. Stauffer, 33 Pa. St. 397, the court held a notice necessary, but that it might save the policy from forfeiture even if given after loss, provided it was given with reasonable diligence after the additional insurance was obtained.   The policy in Arnold v. Insurance Co. 106 Tenn. 529, 61 S. W. 1032, contained a provision that it "shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." The same sort of a clause was in the policy involved in German Ins. Co. v. Savings Assn. 9 Kan. App. 803, 59 Pac. 1092; and it was held that the insured by accepting the benefits of an unauthorized additional insurance ratified it, and hence that additional insurance made the policy of the prior insurance void.   The same was the situation in Gnat v. Westchester Fire Ins. Co. 167 Wis. 274, 167 N. W. 250, L. R. A. 1918D, 779.

The order is affirmed.