ITEN BISCUIT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43667, 45164. Promulgated March 15, 1932.

*Ferdinand Tannebaum, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

Lansdon: The first and most important question for consideration is whether the petitioner is entitled to a deduction, in computing taxable net income of each of the years in controversy, for depreciation of returnable cans in which its products are sold and shipped to its customers. If so, the amounts of such deductions have been agreed upon and stipulated by the parties.

The pertinent provisions of the Revenue Acts of 1921, 1924 and 1926 are as follows:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

The depreciation allowance is limited, by the express provisions of the statutes, to property used in the trade or business. " It represents the reduction, during the year, of the capital assets through wear and tear of the plant used." *United States* v. *Ludey*, 274 U. S. 295. Merchandise held for sale, and, therefore, constituting a part of the taxpayer's stock in trade, is not property used in the business and a taxpayer is not entitled to a deduction for depreciation, specifically as such, in respect thereof. *Munishing Motor Co.*, 1 B. T. A. 286; and *Burton Coal & Lumber Co.*, 22 B. T. A. 133. Obviously, a taxpayer is not entitled to a deduction for depreciation in respect of property disposed of through sale, and in which it has no further capital investment.

The petitioner contends that, whether in or out of its physical possession, the returnable cans in which it sold and shipped its products to customers are its property, are used in the business, and that it is entitled to the depreciation deductions provided by the statutes, in respect thereof. The respondent says that the returnable cans are a part of the petitioner's stock in trade; that the petitioner actually sells the cans as well as their contents, obligating itself only to repurchase the cans, if and when they are returned by the customers; and, therefore, the petitioner is not entitled to the depreciation deductions contended for.

A sale is the "transfer of the property in a thing for a price in money." 35 Cyc. 25; *Mansinger* v. *Steiner-Medinger Co.*, 4 Nebr. (unoff.) 392; 94 N. W. 633. It involves "an agreed price, a vendor, a vendee, an agreement of the former to sell for the agreed price and of the latter to buy for and to pay the agreed price, are essential elements in a contract of sale." *In re Columbus Buggy Co.*, 143 Fed. 851. The transactions here involved were either bailments or sales, the distinction between which is stated in *Sturm* v. *Boker*, 150 U. S. 312, as follows:

The recognized distinction between bailment and sale is that when the identical article is to be returned in the same or in some altered form, the contract is one of bailment and the title to the property is not changed. On the other hand, where there is no obligation to return the specific article, and the receiver is at liberty to return another thing of value, he becomes a debtor to make the return and the title to the property is changed; the transaction is a sale.

In all cases involving the distinction between bailment and sale the courts have endeavored to determine and give effect to the intention of the parties as expressed in their agreements. In our opinion the facts herein fail to support the petitioner's theory. The so-called returnable packages were billed to the customers to be paid for as "other merchandise." There was no reservation or stipulation in the invoice that title remained in the seller, which parted with the article at an agreed price. When the returnable package was paid for by the purchaser his rights of ownership were complete. He could sell it for cash or retain it in his store for the display of crackers or other merchandise not purchased from the petitioner. He could, and the testimony is that in some cases he did, include it in his own inventory at the price paid the petitioner. The returnability of the package was a right conceded by the petitioner, but was in no sense an obligation enforceable at law. Every essential element of a sale and transfer of title is present in the practice of the petitioner and every attribute of ownership exists in the purchaser upon his receipt of the containers and payment therefor.

On the other hand the characteristics of bailment as defined by the Supreme Court in *Sturm* v. *Boker*, *supra*, are not in the transaction here involved. There is no obligation to return the identical article in same or altered form. Any old container originally sold by the petitioner will do, even if it is picked out of a junk heap or acquired by purchase from another dealer. "There is no obligation to return the specific article." "The receiver is at perfect liberty to return another thing of value," namely, 50 cents in money, and when he has done so his title as owner is complete.

Petitioner relies on the evidence that it was always anxious to have the containers returned as soon as possible. Doubtless this is true, and for the very obvious reason that it was highly undesirable to increase its investment in the returnable packages while so many were outstanding under an agreement to repurchase. The returnable cans were a convenience, a method of advertising, and a means for retaining the trade of customers once secured, but the petitioner, very properly, through its efforts to secure returns, sought to minimize appropriations from its operating funds for such purposes. It was also necessary to stress returnability to overcome sales resistance created by competitors who, doubtless, often pointed out the wastefulness of paying almost as much for the cans as for the merchandise they contained. All this theory, however, is in no way overcome by the facts. The returnable package was invoiced and sold to the customer at an agreed price, with an understanding by petitioner to repurchase at the same price. Since the returnable packages, while out of the possession of the petitioner, were not its property and not at such times in use in its trade or business, the claim for depreciation thereon is disallowed. Cf. *La Salle Portland Cement Co.*, 4 B. T. A. 438; *La Salle Cement Co.*, 19 B. T. A. 806.

The conclusion reached above in no wise prevents the petitioner from recovering, without tax, his entire investment in returnable cans that became worthless and unusable in its hands. This recovery is effected not through depreciation, but by charges against the returnable package account, each year, of the cost of the cans that have become useless. The parties have stipulated that for the years 1922 and 1923 the petitioner is entitled to deduct losses on such account in the respective amounts of $22,454.82 and $43,114.28, which have not been allowed in the respondent's computation of the deficiencies for such years, and that for the years 1924, 1925 and 1926 such losses have heretofore been deducted in the respective amounts of $64,673.45, $53,005.98, and $70,069.40.

The parties have also stipulated that the respondent erred in his determinations as to 1922 and 1923 in adding to the net income of those years the sums of $42,293.97 and $28,885.72, respectively, representing adjustments in the can liability account. In view of this stipulation, the net income shown in the deficiency notice for those years should be reduced accordingly.

The respondent claims an increased deficiency for 1922, or, alternatively, for 1926, alleging that he either allowed an excessive deduction for 1922 for a loss sustained by the petitioner in the liquidation of a subsidiary corporation, or that he has understated the net income for 1926, the allegation being predicated upon the fact that in 1926 there was refunded to the petitioner an overpayment of in-

come taxes by the Shelby Biscuit Company, in the sum of $7,657.73, a fact which he failed to take into consideration in determining the amount of the loss sustained in 1922 or in computing the net income for 1926. The hearing developed nothing in addition to the stipulated facts. We see no reason for holding that the petitioner realized income in 1926 as the result of the refund which it received in that year of an overpayment of taxes by its subsidiary which had been dissolved. If it was income at all, it was income for 1922, in which year the petitioner, through the liquidation and dissolution of its subsidiary, succeeded, by virtue of being the sole stockholder thereof, to all the assets, rights and choses in action of the Shelby Biscuit Company. Though making an earnest attempt to do so, the respondent failed to prove that in determining the amount of the loss, which he allowed for 1922, as the result of the liquidation of the Shelby Biscuit Company, he did not give proper effect to this item. The respondent's claim for an increased deficiency for 1922, and the alternative claim for an increased deficiency for 1926, must be denied.

*Decision will be entered under Rule 50.*

*Ferdinand Tannebaum, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.